**SMITH, KLINE & FRENCH LABORA-
TORIES v. CLARK & CLARK et al.**

No. 9048.

Circuit Court of Appeals, Third Circuit.

Argued April 18, 1946.

Decided Aug. 6, 1946.

Rehearing Denied Oct. 17, 1946.

Arthur G. Connolly, of Wilmington, Del. (Morton C. Haight, of Pitman, N. J., Nelson Littell, Hammond & Littell, V. Alex Scher, and Richards & Geier, all of New York City, on the brief), for appellants.

George J. Harding, of Philadelphia, Pa. (Grover C. Richman, Sr., of Camden, N. J., George A. Smith and Busser & Harding, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS and O'CONNELL, Circuit Judges, and GOURLEY, District Judge.

BIGGS, Circuit Judge.

The suit at bar was brought by Smith, Kline & French Laboratories (SKF), a Pennsylvania corporation, against Clark & Clark (Clark), a New Jersey corporation, and Charles L. Morris and Robert Brinton Morris, citizens of New Jersey, trading as Professional Laboratories (Laboratories) and others who need not be named here.[1] Two causes of action are alleged in the complaint. SKF charges that Clark and Laboratories infringed the two claims of Alles' Patent No. 1,879,003 issued on September 27, 1932, upon an application filed on September 2, 1930; SKF also asserts that Clark and Laboratories are guilty of unfair competition. Clark and Laboratories filed an answer denying the validity of the patent or that they had infringed it, denied any unfair trade practices and asserted by way of counterclaim that SKF itself was guilty of unfair competition.

The court below found that the patent was valid and that claim 1 was infringed.[2] It also found Clark and Laboratories guilty of unfair competition. Dismissing the counterclaim, it issued an injunction and ordered an accounting. See D.C., 62 F. Supp. 971–1012. Clark and Laboratories have appealed. We will deal first with the patent and next with the questions of unfair competition.

### The Patent Case

The patent deals with "Salts of 1-Phenyl-2-Aminopropane". 1-phenyl-2-am-

---

[1] The suit was not pressed as to the defendants not named and subsequently was dismissed as to them.

[2] Claim 2 is not in issue. The evidence shows that the defendants did not manufacture or sell amphetamine hydrochloride.

inopropane is also known as amphetamine[3] and phenylisopropylamine. The specification states, "This invention relates to a new composition of matter useful for therapeutic purposes. The composition of matter of my present invention consists of a salt of 1-phenyl-2-aminopropane, $C_6H_5$-$CH_2$-CH $(CH_3)$ $NH_2$, with an acid. Various acids may be used, the most useful being hydrochloric or sulphuric. The salts of this 1-phenyl-2-aminopropane are physiologically active and produce effects in animals and man similar to the effect of the salts of ephedrine. * * *" There follows a description of a method of making salts, including the hydrochloride and the sulphate, which need not be set out here. The patent contains only two claims, as follows: "1. As a new composition of matter, a salt of 1-phenyl-2-aminopropane.", and "2. As a new composition of matter, the hydrochloride of 1-phenyl-2-aminopropane."

On August 29, 1934 Alles filed a disclaimer disclaiming "so much of claim 1 * * * as is in excess of the following: 'As a physiologically active therapeutic agent capable of producing effects in animals and man similar to the effect of salts of ephedrine, a salt of 1-phenyl-2-aminopropane.' ", and disclaiming "so much of claim 2 * * * as is in excess of the following: 'As a physiologically active therapeutic agent capable of producing effects in animals and man similar to the effect of salts of ephedrine, the hydrochloride of 1-phenyl-2-aminopropane.' "

 It is very difficult to evaluate the patent or to determine the impact of the disclaimers on the claims. The fact is that Alles by his specification and by his disclaimers claims *effects*. The claims of a patent must be read in the light of its specifications.[4] A patentee can add nothing to a claim by a disclaimer.[5] A patentee may not claim effects for a new composition of matter. The reason that a patentee may not claim effects for a chemical compound is that the compound works its effects by virtue of its nature and not by reason of any claim made for it by the patentee. It is also established that a patent may not issue for a new use discovered for an old composition of matter.[6] A patent must be liberally construed, however, to sustain the just claim of the inventor. The principle last stated may not, however, be carried to the point to exclude what is in a claim or to interpolate new matter into it. Liberality of construction rather than strictness is the touchstone.[7]

 We think that it would be unfair to destroy Alles' claim 1 because he has claimed effects by his disclaimer when, by reason of the rule that a claim must be read in the light of the specification, claim 1, even without benefit of the disclaimer, would preempt, if the claiming of effects were permissible, "As a new composition of matter, a salt of 1-phenyl-2-aminopropane, *capable of producing effects in animals and man similar to the effect of the salts of ephedrine.*"[8] But since Alles may not claim effects, claim 1 must stand precisely as printed in the patent, viz., "As a new composition of matter, a salt of 1-phenyl-2-aminopropane."

 Alles, however, has not designated any particular salt of amphetamine in claim 1. His specification states that "Various acids may be used [to create the salt], the most useful being hydrochloric or sulphuric." The adjective "Various" means "different; diverse; several; manifold * * *."[9] Interpreting this language (as well as that employed in the disclaimers), the conclusion is inevitable that salts created by the reaction of some acids with

[3] The name "amphetamine" was coined by the American Medical Association.

[4] Schriber v. Cleveland Trust Co., 311 U.S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132.

[5] Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

[6] General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S. Ct. 81.

[7] Rubber Co. v. Goodyear, 9 Wall. 788, 76 U.S. 788, 795, 19 L.Ed. 566; Motion Pictures Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann. Cas.1918A, 959.

[8] We have italicized that portion of the specification which deals with effects, reading it into claim 1.

[9] Webster's New International Dictionary.

amphetamine will have the ephedrine-like quality asserted by Alles but that other salts created by the reaction of other acids with amphetamine will not create salts which will work the desired effect. Since effects may not be claimed, not even experimentation, prohibited by R.S. § 4888, 35 U.S.C.A. § 33, would serve to designate the salts which Alles has claimed in claim 1. This would mean, if there was no alternative construction, that Alles claimed all salts of amphetamine without regard to their effects. Such a conclusion seems absurd for the specification itself shows that Alles lays great store on his discovery that amphetamine salts, particularly the hydrochloride and sulphate, have effects like those of the salts of ephedrine on both the central and the sympathetic nervous systems of animals and man. To hold a patent, based on effects attributed by the inventor to chemical compounds, valid, when the effects insisted on by him may not be claimed, seems unrealistic to a high degree.

Does a possible, albeit narrower, alternative in favor of the patent present itself and require acceptance? Construing claim 1 in the light of the specification may we read the second of the two salts named in Alles' specification, viz., the sulphate (the hydrochloric being already preempted by claim 2) into claim 1? In other words, may we treat amphetamine sulphate as a salt claimed in claim 1? We conclude that we may and should do so.[10] Reading Alles' specification and claim 1 together we entertain no doubt that he intended to include amphetamine sulphate in the monopoly and that that compound is within the scope of the claim.

 What then is the state of the prior art? This has been very fully discussed in the opinion of the court below. We will deal with it only to the extent that we deem it to be pertinent.

In 1887, Edeleano, a German scientist, prepared a paper for the Berichte der Duetschen Chemischen Gesellschaft (Ber. Dtsch. Chem. Gesell. 20:616, 1887), outlining a method for the preparation of phenylisopropylamine which, he asserted, had the formula, $C_6H_5CH_2CH$ $(CH_3)$ $NH_2$. Cf. Alles' formula for 1-phenyl-2-aminopropane. We think the inference is possible that Edeleano actually prepared betaphenylisopropylamine. In any event Edeleano's phenylisopropylamine must be taken as the equivalent of Alles' base, viz., 1-phenyl-2-aminopropane, or amphetamine. SKF and Alles contend that Edeleano did not prepare either the hydrochloride or sulphate of amphetamine. The defendants assert, however, that since Edeleano concededly prepared the base amphetamine it would not constitute invention to prepare such simple salts as the hydrochloride or the sulphate from that base by the use of hydrochloric acid or sulphuric acid. There is the evidence of one of the defendants and of an expert employed by them that the preparation of amphetamine sulphate from amphetamine by the use of sulphuric acid is only "kitchen chemistry". There is testimony by Alles and other experts testifying on behalf of SKF, to the contrary.[11] While the question of what constitutes anticipation is one of law, as open for determination by this court as by the court below, the facts on which the legal defense of anticipation is to be based must be found by the court below. While there was evidence that amphetamine sulphate could be prepared from the base by any skilled chemist, there was also testimony that the creation of this salt could not be so easily

---

10 "Patents should be liberally construed, with a view to protecting the invention which the patentee intended to secure." Johns-Manville Corporation v. National Tank Seal Co., 10 Cir., 49 F.2d 142, 146. See McClain v. Ortmayer, 141 U.S. 419, 423–424, 12 S.Ct. 76, 35 L.Ed. 800; Klein v. Russell, 19 Wall. 433, 86 U.S. 433, 465–467, 22 L.Ed. 116; Schriber Co. v. Cleveland Trust Co., 311 U.S. 211, 217–218, 61 S.Ct. 235, 85 L.Ed. 132. "The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation." Topliff v. Topliff, 145 U.S. 156, 171, 12 S.Ct. 825, 831, 36 L.Ed. 658.

11 In this case we have not restricted ourselves to the inadequate appendices of the parties. The original transcript of testimony has been read and carefully studied.

accomplished. The question to be determined here was really one of fact to be resolved by the trial court in the light of the expert testimony.[12] We cannot say that the learned trial judge was in error in his conclusions as to Edeleano's disclosures. He found that Edeleano's work did not constitute anticipation of Alles' claim. He concluded that the preparation of salts of amphetamine could not be described accurately as "kitchen chemistry" or be accomplished by way of mere routineering. Moreover, Edeleano made no reference to amphetamine sulphate.[13] To constitute anticipation a prior-art reference must disclose the composition of matter claimed.

Under these views it is unnecessary to discuss at length the Jones and Wallis monograph published in 1926 in "The Journal of the American Chemical Society" (J. Am. Chem. S. 48:169, January-June 1926) under the title "The Beckmann Rearrangement Involving Optically Active Radicals". Jones and Wallis reported the creation of the hydrochloride of amphetamine $(C_7H_7)$ $(CH_3)$ CH $NH_3Cl$ but they made no reference to amphetamine sulphate.

It is also unnecessary to discuss the work of Mather and Schaffer in respect to adrenaline or epinephrine, that of Barger and Dale in regard to sympathomimetic amines, that of Chen and Schmidt relating to ephedrine, that of May, or that of Alles himself in respect to his attempts to find a useful drug for treating allergic diseases whereby he discovered amphetamine sulphate, or to compare qualitatively or quantitatively the effects of amphetamine sulphate with those of ephedrine sulphate on the central and sympathetic nervous systems. Disregarding asserted effects, we have treated Alles' claim as preempting a composition of matter not known to the prior art, viz., amphetamine sulphate.

While effects may not be claimed, they may not be ignored. For a composition of matter to be patentable it must not only be new it must also be useful. R.S. § 4886, 35 U.S.C.A. § 31. In a patent claiming a new composition of matter the test of usefulness must be found in results, viz., in effects. Cf. Dennis v. Pitner, 7 Cir., 106 F.2d 142, 146. That Alles' contribution was of great therapeutic use and value may not be doubted. Following his discovery, physicians had at hand a drug which could affect, even create, mood.[14] Alles' discovery is close to pioneer invention. His patent is entitled to a liberal construction in aid of the claim under consideration. We conclude that the court below committed no error when it found claim 1 of the patent valid. That the defendants have infringed it is clear.

### The Unfair Competition Cases

The court below found Clark and Laboratories guilty of unfair competition and enjoined them perpetually from selling or otherwise dealing in amphetamine salts. It found that SKF had committed no acts of unfair competition against the defendants. Its conclusions on the latter point are so clear as not to require discussion herein. That portion of the decree dealing with the defendants' unfair practices requires some modification.

---

[12] In respect to Edeleano the court below found that Edeleano "made reference to certain salts of the base, but he described no salt of amphetamine, nor any procedure for the preparation of any salt thereof". See Finding 11.

The trial judge found also that "Edeleano was considered by the Patent Office Examiner during the prosecution of the Alles application for patent No. 1,-879,003 and the patent was granted thereover". See Finding 12.

[13] If it were our task to weigh the evidence we would attach great importance to the fact that Beilstein of the year 1896 and of the year 1929, defendants' Exhibits LXII and LXIII, makes no reference to any salt of amphetamine created by Edeleano. "Reports of the German Chemical Society" originally compiled by Beilstein is the grand encyclopedia of organic (as well as inorganic) compounds and is supposed to contain all reported compounds.

[14] Amphetamine sulphate has proved itself to be of great importance in the treatment of narcolepsy, post-encephalitic parkinsonism, chronic exhaustion, psychoneurosis and depression, acute and chronic alcoholism. The drug is of singular importance in counteracting the effects of barbiturate poison.

SKF charged the defendants with manufacturing amphetamine sulphate tablets which so closely resembled SKF's tablets that they might be substituted for the latter by unscrupulous druggists; that the defendants deliberately embarked on the course of inducing druggists to substitute the defendants' tablets for those of SKF and were successful in this endeavor. Clark and Laboratories assert that the evidence demonstrates conclusively that only about 25% of their tablets had close resemblance to those of SKF. The accused tablets include a large number of 10 milligram double-scored tablets and a much smaller number of 5 milligram single-scored round white tablets. The defendants' double-scored 10 milligram tablets have concave bottoms and beveled edges. SKF's 10 milligram tablets also possess beveled edges and a lesser degree of concavity.

The accused tablets can be distinguished from the SKF product but to do so requires a sharp eye and close examination. It must be conceded, however, that most tablets of 5 and 10 milligram size, whether made by SKF, the defendants or by other manufacturers, whether containing amphetamine sulphate or other drugs, look alike. It is common knowledge, moreover, that pharmacists do not ordinarily fill prescriptions by making close and individual examination of each tablet that goes to fill a prescription. The druggist takes tablets from carefully labeled bottles and makes certain that his supplies are not mixed.

The single or double scoring of SKF's tablets is functional in order to facilitate the taking of a lesser dosage of a potent drug. The double-scored tablet may be broken into halves or quarters with much greater ease than would be the case if the scorings were absent. The beveled edges, the concavities of the bottoms of the tablets, and indeed the very shape of the tablets, are also functional. Beveled edges prevent crumbling; the concavity of bottoms aids breakage into lesser doses; roundness gives economy of manufacture.

We do not state of course that all tablets are round. As a matter of fact there are tablets in evidence which are rectangular or nearly square in shape. Tablets frequently are colored, as for example are some of the defendants' Profetamine sulphate and Clark-o-Tabs, but the natural color of a tablet is white since the inactive ingredient which composes most of its bulk is sugar-milk. The whiteness of tablets therefore is functional. SKF did not stamp its initials on its tablets nor did the defendants put any distinguishing initials on theirs.[15]

SKF seems to argue, and the court below found, that the accused tablets were intended to resemble and did resemble SKF's product so closely that substitution by the druggist or by the retailer was practicable. Even if the accused tablets had been exact copies of SKF's tablets, the so-called distinctive features of SKF's tablets upon which it relies would none the less be functional. It follows that SKF's contention that the defendants, in copying the features of its tablets were guilty of unfair trade practice, must fall before the decision of the Supreme Court in Warner & Co. v. Lilly & Co., 265 U.S. 526, 528-531, 44 S.Ct. 615, 68 L.Ed. 1161.

In the cited case the defendant copied the plaintiff's chocolate-quinine preparation so exactly that it was indistinguishable from that of the plaintiff. The Supreme Court by Mr. Justice Sutherland said: "Respondent has no exclusive right to the use of its formula. Chocolate is used as an ingredient, not alone for the purpose of imparting a distinctive color, but for the purpose of also making the preparation peculiarly agreeable to the palate, to say nothing of its effect as a suspending medium. While it is not a medicinal element in the preparation, it serves a substantial and desirable use, which prevents it from being a mere matter of dress. It does not merely serve the incidental use of identifying the respondent's preparation, * * *, and it is doubtful whether it should be called a

---

15 The absence of the initialing of tablets by the manufacturers is explained by the fact that some members of the medical profession desire to cause their patients to believe that prescriptions are being specially prepared for them, an illusion which would be destroyed if the patient received from the druggist tablets stamped with a manufacturer's initials.

nonessential. The petitioner or anyone else is at liberty under the law to manufacture and market an exactly similar preparation containing chocolate and to notify the public that it is being done." In the case at bar, the patent aside, SKF has no exclusive right to sell amphetamine sulphate and it may not preempt the market in that drug. It follows therefore, the patent aside, that SKF may not prevent the defendants from selling amphetamine sulphate tablets possessing the functional features referred to.

The vice of the defendants' position lies elsewhere. To paraphrase the words of Mr. Justice Sutherland in the Lilly case, 265 U.S. 526 at page 530, 44 S.Ct. 615, 617, 68 L.Ed. 1161, the defendants sought to avail themselves of the favorable reputation which SKF had established for its amphetamine sulphate tablets. It is a fair inference from the evidence that at least some of the defendants' salesmen suggested that prescriptions for SKF's Benzedrine [16] sulphate, widely known and advertised as its brand of amphetamine sulphate, might be filled without danger of detection by the defendants' brand of amphetamine sulphate, Profetamine. The feasibility of substituting Profetamine sulphate for Benzedrine sulphate was brought to the mind of the druggist by the defendants' salesman pointing out the identity of the two preparations and the enhanced profit to be made by selling the former in lieu of the latter. For an analogy see the Lilly decision. This type of palming off was clearly a most important factor in the District Judge's decision that the defendants had been guilty of unfair competition.

There were other unfair practices which need not be gone into. One of the most typical of them was the statement which Charles L. Morris, the moving force of the defendants' business made to the trade that Clark was the sole purveyor of amphetamine sulphate. This misstatement alone was sufficient to destroy Morris' credibility.

None the less the decree of the court below goes too far in the light of the Lilly case. SKF will have no exclusive right to make and sell amphetamine sulphate when the monopoly of Alles' patent expires. Clark or Laboratories or anyone else will then be free to manufacture and market amphetamine sulphate in tablets resembling those of SKF and to notify the public that they are doing so. This does not mean, however, that when the patent has expired the defendants may palm off their amphetamine sulphate tablets as those of SKF. SKF is entitled to the reputation which its goods have acquired and the public is entitled to a means of distinguishing between SKF's tablets and those of the defendants'. The unfair competition consists in the unfair and fraudulent advantage taken by the defendants, as in the Lilly case, to pass off their product as that of SKF. As was said in the Lilly case, "The use disassociated from the fraud is entirely lawful, and it is against the fraud which the injunction lies."

### The Relief to be Given by the Decree

The court below held that the defendants should be perpetually enjoined from the manufacture and sale of amphetamine sulphate. This goes too far. An injunction will lie to the end of the monopoly of the patent but no longer. SKF also is entitled, when the monopoly of the patent has expired, to a decree enjoining the palming off of the defendants' product for that of SKF. A provision requiring the defendants to stamp their tablets with the initials C & C[17] or some other distinguishing mark would be appropriate. With these suggestions the form and substance of the injunction can be more satisfactorily determined by the District Court than by ourselves.

Paragraphs 1 to 9 and 13 to 17 of the judgment are affirmed. Paragraphs 10, 11 and 12 thereof are vacated. The case is remanded to the District Court for the reformation of the decree in accordance with this opinion.

---

[16] "Benzedrine" is SKF's trade name for amphetamine. The defendants employed the trade name "Profetamine" for amphetamine manufactured and sold by them.

[17] See Callmann, Unfair Competition and Trade Marks, Vol. 2, p. 1034.