**UNIQUE ART MFG. CO., Inc. v. T. COHN, Inc.**

Civil Action No. 9241.

United States District Court
E. D. New York.

Jan. 14, 1949.

Dean, Fairbank & Hirsch, of New York City (Morris Hirsch and A. B. Colvin, both of New York City, of counsel), for plaintiff.

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for defendant.

BYERS, District Judge.

The plaintiff seeks an injunction and accounting for profits, because of alleged unfair competition practiced by the defendant.

They both manufacture and sell a toy imitation of a machine gun, but it is not asserted that the defendant's product simulates that of the plaintiff as to size, shape or conformation. The conduct complained of is the substantial adoption of the plaintiff's color scheme, which is an important characteristic of the article, since it serves to attract the eyes of children, and therefore of their parents who do the buying—apparently on the assumption that they think (if such is the process) that it is a good thing for young children to play with such toys.

The testimony is that the bright hues of the primary colors red, blue and yellow, with black for contrast, are the only ones available. Plaintiff urges that the over-all aspect of its choice of color combination is so distinctive, that protection thereof should be granted by way of injunction, although the defendant's toy sells for roughly one-quarter of the retail price of the plaintiff's product. The figures are: $2.98 plaintiff's toy; $.69 defendant's toy.

The plaintiff's device came upon the market about June 1, 1947, and the defendant is quite indefinite as to the first public sale of its own product; however, since its President testified that he purchased one of the former, prior to adopting a scheme of color and decoration of the latter, and compared the two and observed the resemblance between them, it is a fair inference that the defendant's toy gun made its appearance shortly prior to the time that it came to plaintiff's notice, which was early in June of 1948, or nearly a year later than the first sales made by the plaintiff.

There can be no doubt that the defendant's conduct was deliberate and intentional, and was indulged in because the imitation would promote the defendant's business. Whether an actionable wrong was thereby perpetrated is the question which requires decision.

The evidence is persuasive that the manufacture and distribution of toy machine guns date back at least to 1942, when the plaintiff manufactured such a device for the Marx Company. It was sold under the name of and by the latter company, which means that the plaintiff was not identified with that particular article at that time, nor apparently until it turned out in June of 1947 the one which has been referred to and is in evidence as Exhibit 5. Without reciting in detail the scheme of color decoration thereof, it will suffice to say that it was new and original; that the predominant color characteristic is a light blue (turquoise?) with yellow, red and black elements so arranged as to present a colorful object of its kind, looking like a child's model of a machine gun, and possessing a sparking device which, when operated, causes sparks to fly from the muzzle in simulation of the result of firing a genuine weapon.

In that respect there is no effort to imitate in the defendant's toy, which possesses merely a clicking element to indicate operation of a firearm.

It is a fair inference that plaintiff put its device upon the market, for the reason that in 1947 the Marx Company toy was first manufactured and sold by that Company itself.

This means that the opportunity to establish a secondary meaning for the plaintiff's color scheme was restricted to the period of about one year prior to the filing of this complaint on July 23, 1948.

Perhaps that is one reason why there has been no attempt made to prove the existence of a secondary meaning attaching to the plaintiff's scheme of decoration, and although the complaint alleges that there was such, this decision will proceed upon the understanding that there has been no attempt made to demonstrate that averment.

In considering whether the absence of such proof must influence the decision to be made, it is to be remembered that the plaintiff's device, as such, has not been copied or simulated. Not only is the defendant's toy smaller by at least one-third, but the mode of construction, physical conformation and mechanism are different, as the plaintiff's brief frankly concedes. This state of the proof cannot be ignored in considering the cases upon which plaintiff relies to demonstrate the proposition that the absence of secondary meaning tending to identify in the minds of the purchasing public this color scheme as indication of the origin of the plaintiff's toy, is of no legal significance.

Reliance is had upon:

G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 142 F.2d 499, 501.

Trade-mark infringement and unfair competition by the defendant having been found, the decision was affirmed, granting an injunction and damages.

The question of unfair competition is thus defined:

"* * * whether the use of the defendant's label is unfair competition because it is likely to result in the substitution of the defendant's champagne for 'Mumm's' champagne, bearing the red stripe; * * *."

The circumstances under which substitution might be practiced by an unscrupulous purveyor are delineated in a passage in the opinion, of characteristic literary deftness; even one untutored in the circumstances pictured would gather that it is the possible substitution of one complete product of the vineyard, for the other, which is deemed to constitute the appropriate occasions of unfair competition. The Court cited My-T Fine Corp. v. Samuels, 2 Cir., 69 F.2d 76, and E. Kahn's Sons Co. v. Columbus Packing Co., 6 Cir., 82 F.2d 897, in support of the statement that, "as soon as it appears that the defendant has imitated a make-up, the court will ask no further proof that his purpose to trade upon the plaintiff's reputation is likely to be successful".

The first of these cases dealt with a chocolate and sugar confection sold in small cardboard boxes of distinctive coloration and appearance; the second with containers of lard, the pails being decorated with colored stripings and designs and paper wrappings.

In both cases the close resemblance to the trade dress of the originator, employed by the offender, was such as to justify the court in ascribing to the latter, a purpose of inducing possible purchasers to believe that in buying the offending products they were actually acquiring those of the complaining companies; that being found, proof of actual deception, i. e., confusion, would not be required in order to justify the issuance of an injunction.

If these cases are to be taken as establishing that, in causes of unfair competition as distinguished from trade-mark infringement, only a likelihood of confusion as distinguished from actual confusion need be shown (See, however, dictum in Barbasol Co. v. Jacobs, 7 Cir., 160 F.2d 336, at page 340), it is still true that, in each, a substitution for the respective plaintiffs' products by that of the appropriate defendant, could be anticipated if an injunction were to be refused.

That is not the showing here; it is not argued that a prospective purchaser of the

plaintiff's muzzle spark toy gun, selling for about $3.00, could be expected to purchase the smaller and structurally different product of the defendant, which sells for about 70 cents, merely because the latter bears a coloration which is deceptively similar to that of the former. It is argued, however, that such a purchaser would be induced to believe that the defendant's toy is a "little brother" to that of the plaintiff, which is that kind of invasion of the plaintiff's rights which gives it a claim for relief, since the plaintiff thus becomes a kind of putative parent of spurious offspring.

It is thought that this contention will lack persuasiveness until the plaintiff's so-called lithography can be said to present more than its own grouping of colors on such a toy, and has come to fairly embody both a definite product, and its origin. For the present, the plaintiff's toy reveals a mere concept of design in color, the adoption and publication of which evokes no claim upon the law for protection.

What was written in reversing a judgment for plaintiff in Durable Toy & Novelty Corporation v. J. Chein & Co., 2 Cir., 133 F.2d 853, at page 855, is thought to point the path to decision here, although the Court was dealing with trade-mark infringement.

There it was said that the trade-mark "Uncle Sam" was to be distinguished from a coined expression, or a personal name; and which, because of its being a part of the national mythology, was something less than a truly proprietary sign; therefore an injunction would not be appropriate to protect the plaintiff against buyers for retailers who might think plaintiff was "putting out so paltry a product".

The defendant's toy is scarcely to be classified as paltry when compared with the plaintiff's, but its color scheme is fairly to be likened to so nebulous a trade-mark as "Uncle Sam".

The plaintiff has not offered any of its own advertising, nor does it seem to argue that its distribution has been built up in response thereto; Exhibit 9 is a sample of newspaper holiday advertising by a department store, in which the plaintiff's product is mentioned under its trade-name or mark of "Superfire" which appears on the box in which the toy is sold. The color scheme is not mentioned, but the phrase: "In six bright colors" appears.

The description printed is: "Wind the motor, press the trigger and it rat-tats away with plenty of noise and spark".

In other words, there is no showing that the plaintiff's color scheme and design have been publicized as characteristic of its product.

The question of whether the plaintiff's scheme of coloration is functional as the defendant urges—which seems to be pretty far-fetched—or non-functional as the plaintiff asserts, seems not to require discussion or decision.

The required showing in the copying of non-functional features (See Enterprise Mfg. Co. v. Landers, Frary & Clark, 2 Cir., 131 F. 240; Yale & Towne Mfg. Co. v. Alder, 2 Cir., 154 F. 37; Rushmore v. Manhattan Screw & Stamping Works, 2 Cir., 163 F. 939, 16 L.R.A., N.S., 269; Rushmore v. Badger Brass Mfg. Co., 2 Cir., 198 F. 379; Margarete Steiff v. Bing, 2 Cir., 206 F. 900), as expounded in Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, is generally to the effect that what is now known as a secondary meaning is requisite. This is sound, for otherwise a plaintiff is not hurt.

The plaintiff's color scheme is thought to be comparable to the design of silk goods in the piece, as to which the dismissal of plaintiff's bill was affirmed in Cheney Bros. v. Doris Silk Corporation, 2 Cir., 35 F.2d 279, in an opinion which clearly recognizes the restrictions which forbid the courts to correct by judicial process the kind of commercial filching that the defendant in that case practiced, and which strongly resembles what is shown on the part of this defendant.

Lucien Lelong, Inc., v. Lander Co., 2 Cir., 164 F.2d 395 contains a helpful discussion of what must be demonstrated by a plaintiff in a cause for unfair competition based upon the imitation of a container, if he expects to succeed.

On the subject of this plaintiff's showing in respect of loss of business, it is true

that the figures in evidence (S.M.P. 84) show a decline in its chain store orders in the first eight months of 1948 as compared with a similar period in 1947, but whether that fact is to be attributed to the appearance of the defendant's toy about June 1, 1948 (assuming that to be the approximate date, as I must under the testimony) has not been established. No chain store buyers were called, and their absence was explained as being due to their unwillingness to testify against any source of their supply.

Be the reason what it may, the result is that there is no competent evidence that the plaintiff's business has been adversely affected by the defendant's conduct in painting its toy guns in substantial imitation of the plaintiff's product.

The case has been considered in its strongest aspect against the defendant, i. e., with reference to Exhibit 1. That is the toy gun which most strongly resembles Exhibit 5, made by the plaintiff.

The testimony is that, upon receiving the plaintiff's notice of infringement, and before the complaint was filed, the defendant ceased using the exact pattern of coloration shown on that Exhibit, by eliminating entirely the yellow element thereof. The altered appearance, shown by Exhibit B, is less like that of plaintiff's product, but not sufficiently different to suggest more than an induced acquiescence in the wisdom of following an expedient course. The subsequent changes in coloration are shown in Exhibits D and E, which were adopted after this litigation was under way, and during the hearing the plaintiff explicitly refused to declare upon those Exhibits.

For the reasons stated, it is concluded that the plaintiff's showing is insufficient to justify issuing any injunction against the defendant; not because its copying of the plaintiff's scheme of coloration is commendable in any sense, but because, under all the circumstances shown, the law seems not to afford the plaintiff a remedy against it. This is true whether reliance is had upon the decisions of the New York State Courts, which have been consulted, or upon those of the Federal Courts.

Complaint dismissed, without costs. Settle decree.

Findings are filed herewith.

In connection with the opinion of even date in this cause, the Court makes the following:

## Findings.

1. This is an unfair competition case, and the jurisdiction of the Court is based upon diversity of citizenship, namely, the plaintiff is a corporation of New Jersey, having its principal office in Newark, and the defendant is a corporation of New York, having its principal place of business in the City of New York, Borough of Brooklyn, and the subject-matter is apparently in excess of $3,000, exclusive of interest and costs.

2. The plaintiff manufactures and sells toy guns in general resemblance to machine guns, and has been so engaged since about June 1, 1947, selling its product to department stores, chain toy stores, and chain stores.

3. The defendant likewise manufactures and sells a toy gun which generally resembles a machine gun, and its customers are, for the most part, chain stores.

4. The defendant's toy gun was placed upon the market on or about, or shortly prior to, July 1, 1948.

5. The retail selling price of the plaintiff's product is $2.98, and that of the defendant's is $.69.

6. In putting its product upon the market, the plaintiff adopted a color scheme which was original and embodied light blue, yellow, red and black elements, so arranged as to present a colorful and arresting appearance.

7. The plaintiff's product possesses a sparking device which, when operated, causes sparks to fly from the muzzle, in simulation of the result of firing an actual machine gun.

8. The defendant's toy gun contains no such sparking device, and is smaller than the plaintiff's toy by at least one-third; and the mode of construction, physical con-

formation, and mechanism differ from those elements of the plaintiff's device.

9. When the defendant put its product upon the market, it substantially copied the color scheme previously adopted and used by the plaintiff, with the result that, as to the entire scheme of coloration only, the defendant's toy was deceptively similar to that of the plaintiff. Such a toy is in evidence as Exhibit 1.

10. The said product of the defendant was discontinued following the receipt by the defendant of notice of infringement given by the plaintiff; and defendant's product colored as shown in Exhibit 1 was not being sold at the time of final hearing.

11. Exhibit B is another of defendant's products, which is also deceptively similar to that of the plaintiff in the matter of coloration, but less so, in that the yellow element has been eliminated. That product was not being sold at the time of the hearing.

12. There is no proof that the plaintiff's color scheme, as so adopted and used, has established in the minds of purchasers the identity of the article to which it applies, or that the toy gun so decorated is a product of the plaintiff.

13. The evidence does not disclose instances of confusion on the part of the public or of buyers of department, toy, or chain stores, between the said products of these parties.

14. The evidence does not disclose even one instance of a palming off, by any one, of the defendant's product for that of the plaintiff.

15. The defendant has volunteered to entirely remove from its line its toy gun painted according to the color scheme shown on Exhibit 1, and it might appropriately do so as to Exhibit B.

### Conclusions of Law.

I. The defendant's conduct, in copying the color scheme of the plaintiff's toy as exemplified in Exhibit 1, and to a less extent in Exhibit B, in the absence of proof that the plaintiff's color scheme has acquired a secondary meaning, or of confusion, or of palming off, is insufficient, according to the evidence, to establish the plaintiff's claim for relief as stated in the complaint.

II. The complaint will be dismissed, without costs.