## SMITH, KLINE & FRENCH LABORA-TORIES v. HEART PHARMACEU-TICAL CORPORATION et al.
### Civ. No. 57–341.

United States District Court
S. D. New York.

May 25, 1950.

Klein, Alexander & Cooper, New York City, George J. Harding, Philadelphia, Pa., and Fred A. Klein, New York City, of counsel, for plaintiff.

Jacob Rassner, Jack Steinman, New York City, of counsel, for defendants.

S. H. KAUFMAN, District Judge.

This is an action for unfair competition. Jurisdiction is based on diversity of citizenship. Plaintiff moves for a temporary injunction.

Plaintiff and its predecessors have engaged in the manufacture of pharmaceuticals continually since 1841. It does a large volume of business and enjoys a good reputation throughout the medical profession and drug trade.

Prior to 1940, plaintiff commenced to market the drugs amphetamine sulfate and dextro-amphetamine sulfate, under the trade names Benzedrine and Dexedrine, respectively, and has continued to do so to date. The drugs are of a potent character and are dispensed to the ultimate consumer only on a physician's prescription. When prescribed by a physician, the products are referred to by the names Benzedrine and Dexedrine or by their pharmaceutical

names of amphetamine sulfate and dextro-amphetamine sulfate. Prior to May, 1949, plaintiff marketed amphetamine sulfate (Benzedrine) in two tablet forms: (1) a round white single-scored tablet of 5-milligram dosage, and (2) a round white double-scored tablet of 10-milligram dosage; and dextro-amphetamine sulfate (Dexedrine) in a round yellow single-scored tablet of 5-milligram dosage.

In May, 1949, plaintiff adopted a new combination of shape and colors for its tablets. After wide investigation, and with a view toward the use of a distinctive shape and distinctive colors, it adopted a generally triangular and more specifically a curved edged, rounded cornered triangular shape (resembling a "heart shape"), having a score extending from the apex to the middle of the base, colored pinkish brown, for amphetamine sulfate, and orange for dextro-amphetamine sulfate. The shape and colors of the tablets, aside from the score which facilitates breaking, are non-functional.

Although it appears that similar shapes and colors have been used before in the manufacture of various tablets by various concerns, nevertheless it is clear on this record that the combination of the shape and colors contrived by plaintiff has never been used by any other manufacturer of pharmaceutical products.

At the time of the adoption by plaintiff of this combination of shape and colors for its tablets, much publicity regarding these changes was given to the medical profession, hopitals, the wholesale and retail trade and national and state pharmaceutical associations. At the same time, plaintiff instructed its wholesale customers and representatives to withdraw from retail druggists the latters' stocks of tablets then in their hands, and to replace them with the new tablets. Plaintiff expended approximately $900,000 in publicizing the new combination of shape and colors and in effectuating the substitution in stocks.

Druggists, physicians, students of pharmacy, wholesale distributors, and even laymen, recognize plaintiff's tablets by their combination of shape and colors.

Defendant Heart Pharmaceutical Corporation (hereinafter referred to as H.P.C.) is a New York corporation, which was incorporated in December, 1949. Defendants Lang, Besser and Shaffer are directors and defendant Rassner is an officer of H.P.C. The capital stock of H.P.C. is stated to be 100 shares without nominal or par value. In March and April, 1950, H.P.C. offered for sale by postcards to druggists throughout the United States, amphetamine sulfate and dextro-amphetamine sulfate tablets at prices substantially lower than those at which plaintiff sold its tablets. The postcards sent in March 1949 contained a pictorial representation of H.P.C.'s tablets, which was an exact replica of the shape used by plaintiff. Imprinted on the pictorial representations of the tablets was the notation "Color Guaranteed". The postcards sent out in April 1950 were the same, except that the words "orange" and "tan" were added and appeared next to the pictorial representations of the dextro-amphetamine sulfate and the amphetamine sulfate tablets, respectively.

H.P.C. admits that it had knowledge of the shape and colors used by plaintiff for its products and that its choice of shape and colors for its tablets was deliberate. Defendant H.P.C. markets no other pharmaceutical products. An examination by the naked eye of H.P.C.'s and plaintiff's products discloses no means by which they can be distinguished.

Many physicians prescribe drugs by the use of trade names; others by the use of the common or generic name of the drugs. A druggist must fill a prescription with the exact article ordered by the physician. Thus, if a physician prescribes Benzedrine or Dexedrine, the druggist must use plaintiff's tablets. If a physician prescribes amphetamine sulfate or dextro-amphetamine sulfate a druggist is free to fill the prescription with the product of any manufacturer.

Sales to druggists are in large original bottles which bear distinguishing labels, and no suggestion of deception as to the bottles has been made. Sales to the ultimate consumer, however, are of the tablets themselves without the bottles. Plaintiff's

affidavits show nineteen specific instances of "palming off"; that is, druggists have filled prescriptions calling for Benzedrine or Dexedrine with defendants' products. Although the affidavits submitted by defendants attempt to dispute these instances of "palming off", the allegations therein contained are purely hearsay.

 Defendants claim that since no deception was practiced by it on its immediate purchasers or the ultimate consumers, it has committed no wrong. The law, however, is not so naive as defendants would have this court believe. "That no deception was practiced on the retail dealers, and that they knew exactly what they were getting, is of no consequence. The wrong was in designedly enabling the dealers to palm off the preparation as that of the * * * [plaintiff]. * * * One who induces another to commit a fraud and furnishes the means of consummating it is equally guilty and liable for the injury." William R. Warner & Co. v. Lilly & Co., 265 U.S. 526, 530–531, 44 S.Ct. 615, 617, 68 L.Ed. 1161.

Defendants also urge that in any event there is no evidence to show that defendants induced druggists to commit a fraud. It is true that the affidavits submitted do not allege any direct instance in which defendants or their agents suggested to druggists that their product might be substituted for that of plaintiff without danger of detection. However, this court cannot be insensible to the practical effect of defendants' advertisements and the use of the term "Color Guaranteed". Certainly, the possibility of substitution was brought to the mind of druggists by the pictorial representation of the shape and the designation of the colors of defendants' tablets as well as the lower prices at which they could be obtained. See Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 157 F.2d 725, 731. There could be no other reason for the admitted deliberate limitation of plaintiff's tablets. Defendants may not, with impunity, avail themselves of the favorable reputation which plaintiff has so painstakingly established.

The motion for a preliminary injunction is granted. Defendants, their respective officers, agents, servants, employees and attorneys, and all persons in active consort or participation with them or any one of them will be restrained, until the final determination of this action, from making, advertising, offering for sale, delivering or selling amphetamine sulfate and dextro-amphetamine sulfate in tablets having the combination of shape and colors of plaintiff's products or in any other shape and colors so closely resembling the combination of shape and colors of plaintiff's products as to be likely to enable druggists to palm off defendants' products as plaintiff's products.

If defendants are desirous of continuing to market their products in any other shape or colors, they may do so, but only on prior application to this court, at which time the distinctive features which defendants will be required to use will be determined. Plaintiff will post a bond in the sum of $10,000, conditioned as provided in Rule 65(c) of the Federal Rules of Civil Procedure.

Settle order on notice.