**The UPJOHN COMPANY, Plaintiff,**

v.

**David SCHWARTZ, doing business as Bryant Pharmaceutical Co., Defendant.**

United States District Court
S. D. New York.
Dec. 22, 1954.

Kenyon & Kenyon, New York City, by Ralph L. Chappell, and Hugh A. Chapin, New York City, for plaintiff.

Arthur D. Herrick, New York City, by Morton L. Leavy, New York City, for defendant.

BONDY, District Judge.

Plaintiff, a Michigan corporation, engaged in the preparation, distribution and sale of pharmaceutical products, brought this action against defendant, a citizen of the State of New York, doing business as the Bryant Pharmaceutical Company, likewise engaged in the preparation, distribution and sale of pharmaceutical products, for trade-mark infringement and unfair competition.

In its complaint plaintiff alleged two causes of action as to each of seven pharmaceutical products, one for trade-mark infringement and one for unfair competition, and as to all collectively a final cause of action for unfair competition. Plaintiff claims direct trade-mark infringement only in so far as the trade-name Syrocol is confusingly similar to the registered trade-mark Cheracol.

Plaintiff and defendant manufacture, or have manufactured for them according to their specifications, the products herein involved. At times both plaintiff and defendant bought some of such products from the same manufacturer. These products consist of ingredients which are enclosed in capsules or compressed into sugar-coated tablets, or are in liquid form. Though sometimes sold pursuant to a memorandum prescription, the products of both parties may be dispensed without a prescription.

Other than that defendant's Capulets differ in color from plaintiff's corresponding Unicaps, each product of defendant is almost identical with plaintiff's corresponding product in color, size, shape and ingredients, or in aroma, flavor, color and ingredients. Though the color of plaintiff's liquid Kaopectate and defendant's corresponding liquid Neutrapect is the result of the combination of their ingredients, none of the colors, sizes, shapes, aromas or flavors of any of the products are functional. Plaintiff's products are: (1) Unicap, a football shaped, yellowish-tan, multiple vitamin capsule (plaintiff introduced Unicap in 1940, has spent over $1,200,000 in advertising it and has sold over $88,000,000 worth); (2) Zymacap, a round shaped, red, multiple vitamin capsule (plaintiff introduced Zymacap in 1945, has spent over $825,000 in advertising it and has sold over $33,000,000 worth); (3) Cebēfortis, a vitamin preparation put up in a lenticular shaped, bright red tablet (plaintiff introduced Cebēfortis in 1945, has spent over $360,000 in advertising it and has sold over $11,200,000 worth); (4) Ferrated Liver, an iron, liver and vitamin preparation put up in both an ovoid shaped, dark green capsule and a lenticular shaped, bluish-green tablet (plaintiff introduced the capsule in 1941 and the tablet in 1944, has spent over $600,000 in advertising the two and has sold over $23,500,000 worth of them); (5) Ferrated Liver with Folic Acid, an iron, liver and vitamin preparation put up in a lenticular shaped, red tablet (plaintiff introduced Ferrated Liver with Folic Acid in 1948, has spent over $99,000 in advertising it and has sold over $3,300,000 worth); (6) Cheracol, a cherry flavored, red cough syrup (plaintiff introduced Cheracol in 1924, has spent over $370,000 in advertising it and has

sold over $40,300,000 worth); and (7) Kaopectate, an odd-flavored, off-white antidiarrhea preparation (plaintiff introduced Kaopectate in 1936, has spent over $230,000 in advertising it and has sold over $12,400,000 worth). There is evidence that Unicap and Zymacap capsules darken with age. Defendant's corresponding products are: (1) Capulets, brownish-tan in color; (2) Byracaps; (3) Hi B & C; (4) Iron & Liver Capsules and Iron & Liver Tablets; (5) Iron & Liver with Folic Acid; (6) Syrocol; and (7) Neutrapect. The evidence discloses that defendant first sold Capulets, Byracaps, Hi B & C, Iron & Liver Capsules, and Iron & Liver Tablets in 1951.

All the products of plaintiff and defendant with the exception of plaintiff's liquid Cheracol are packed in brown glass bottles. There are labels on these bottles which bear the trade-mark or trade-name of the product and the name of plaintiff or defendant as distributor thereof. The plaintiff's bottles are packed in pasteboard boxes upon which there appears the name "Upjohn" and the registered trade-mark of each product. The bottles of both parties are of different sizes. The small are for direct over-the-counter sale, the large are to enable pharmacists to repack the products into smaller containers of their own for sale to consumers. When pharmacists use their own containers they often place labels thereon which do not identify the manufacturer or bear the trade-mark or trade-name of the product.

The chemical formulas of all the products are in common use. Plaintiff does not claim any right to prevent defendant or anyone else from using them. None of the shapes, sizes, colors, flavors or aromas of these products is unique, or distinctive or different from those used in products of other manufacturers. Plaintiff does not claim that it has any exclusive right to any particular color, shape, size, aroma or taste of any of its products. It concedes that defendant's bottles and labels are not unfair. Plaintiff only claims the exclusive right to the particular combination of size, shape, col-

or and ingredients or the particular combination of taste, aroma, color and ingredients utilized for each product in question because it has established a secondary meaning therein by extensive advertising, the long continued sale thereof and great demand therefor.

■■ There is no doubt that as between plaintiff and defendant plaintiff is the first comer, and that the similarity between plaintiff's and defendant's products is not a coincidence but the result of defendant's deliberate copying. Defendant has not offered any valid excuse for so imitating plaintiff's products and his purpose could only be to benefit by the demand that plaintiff has created for such products. However, since plaintiff's products are not covered by patents, defendant is legally entitled to slavishly duplicate them and so profit by plaintiff's efforts so long as he does not interfere with any of plaintiff's rights. Defendant does not interfere with any of plaintiff's rights in the absence of proof by plaintiff that the combinations of size, shape, color and ingredients of its capsules and tablets and the combinations of color, flavor, aroma and ingredients of its liquids have acquired a secondary meaning and there is likelihood of confusion between plaintiff's and defendant's products, or that there has been "palming-off" of defendant's products as plaintiff's products. See Algren Watch Findings Co. v. Kalinsky, 2 Cir., 197 F.2d 69, 72; Chas. D. Briddell, Inc. v. Alglobe Trading Corp., 2 Cir., 194 F.2d 416, 418, 419; General Time Instruments Corp. v. United States Time Corp., 2 Cir., 165 F.2d 853, 854, certiorari denied 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770; Mavco, Inc. v. Hampden Sales Ass'n, 273 App.Div. 297, 302–304, 77 N.Y.S.2d 510; American Binder Co. v. Regal & Wade Mfg. Co., Sup., 106 N.Y.S.2d 543, 546.

■ To establish secondary meaning "it must be shown that (1) the design is a mark of distinction identifying its source, and (2) the purchasers are moved to buy the article because of its source." Lucien Lelong, Inc., v. Lander

Co., 2 Cir., 164 F.2d 395, 397. "The article itself must be so clearly identified with its source that its supply from any other source is clearly calculated to deceive the public and lead it to purchase the goods of one for that [sic] of another." Zangerle & Peterson Co. v. Venice Furn. Novelty Mfg. Co., 7 Cir., 133 F.2d 266, 270. Plaintiff must show "that the appearance of his wares has in fact come to mean that some particular person—the plaintiff may not be individually known—makes them, and that the public cares who does make them, and not merely for their appearance and structure. * * * The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source." Chas. D. Briddell, Inc., v. Alglobe Trading Corp., supra, 194 F.2d at page 419; Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, 300.

Purchasers of pharmaceutical products are generally interested in the reliability of the source of pharmaceuticals. See Sinko v. Snow-Craggs Corp., 7 Cir., 105 F.2d 450, 453. Consequently, the decisive factor here is what distinguishes plaintiff as the source of its products for the ordinarily prudent purchaser. Plaintiff claims to be identified by the combinations of appearance and ingredients of its products, but it has failed to prove this. The "make-ups" of plaintiff's products are not unique and the average consumer is aware that like "make-ups" are, and have been, used for different kinds of pharmaceutical products. In view of this it is improbable that the average consumer would be able to identify the appearances of plaintiff's products with any particular source and plaintiff has failed to show that it has succeeded in appreciably lessening that improbability. Though extensive advertising and widespread sales of a product, and the long continued use of a design or combination for that product are some evidence that such design or combination has acquired a secondary meaning, Sha-

ler Co. v. Rite-Way Products, 6 Cir., 107 F.2d 82, certiorari denied 310 U.S. 634, 60 S.Ct. 1076, 84 L.Ed. 1403; Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F. 2d 555, certiorari granted 281 U.S. 710, 50 S.Ct. 333, 74 L.Ed. 1132, certiorari dismissed 282 U.S. 813, 51 S.Ct. 214, 75 L.Ed. 728, they are not conclusive. See Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra, 194 F.2d at pages 418–419; General Time Instruments Corp v. United States Time Corp., supra, 165 F. 2d at pages 854–855; cf. Mavco, Inc. v. Hampden Sales Ass'n, supra, 273 App. Div. at page 303, 77 N.Y.S.2d 510. Assuming that the plaintiff was the first to introduce, and has long used, the particular combinations of ingredients and make-up for the products herein involved, it has failed to establish that it originated anyone of the make-ups. Plaintiff's sales have been considerable, but there is no evidence as to how these compare with the sales of other products having the same appearance. Since most of plaintiff's advertising was to inform doctors and druggists of its products and accordingly could not acquaint the public with the appearance of plaintiff's products, and since the small volume of its advertising to the public emphasized the trade-marks of plaintiff's products rather than their appearances, the amounts that plaintiff has spent to advertise its products are hardly sufficient to establish secondary meaning. In view of the fact that similar make-ups, though with different ingredients, are used for a number of products, plaintiff's burden of establishing a secondary meaning for the appearance of its products was clearly a difficult one which it failed to sustain. See General Time Instruments Corp. v. United States Time Corp., supra, 165 F. 2d at page 855; Sinko v. Snow-Craggs Corp., supra; Turner & Seymour Mfg. Co. v. A. & J. Mfg. Co., 2 Cir., 20 F.2d 298, 301. The fact that the others who use the same make-ups as plaintiff use different ingredients makes no difference. Plaintiff's products can not acquire a secondary meaning by reason of their ingredients alone, see Warner & Co. v. Lilly

& Co., 265 U.S. 526, 531, 44 S.Ct. 615, 68 L.Ed. 1161; cf. Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 122, 59 S.Ct. 109, 83 L.Ed. 73; Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 157 F.2d 725, 730–731, certiorari denied 329 U.S. 796, 67 S.Ct. 482, 91 L.Ed. 681, rehearing denied 329 U.S. 834, 67 S.Ct. 622, 91 L.Ed. 706, and they have not acquired a secondary meaning by reason of their appearance. Consequently, adding the ingredients of plaintiff's products to their appearances can not result in identifying plaintiff as the source of its products.

Even if any of the combinations of appearance and ingredients that plaintiff has adopted for its products be deemed to have acquired a secondary meaning, defendant will not be found to have competed unfairly in copying those combinations unless there is also a likelihood that defendant's products will be confused with plaintiff's products by the ordinarily prudent purchaser. See General Time Instruments Corp. v. United States Time Corp., supra, 165 F.2d at page 855; Lucien Lelong, Inc. v. Lander Co., supra. Defendant's deliberate copying alone is not enough to prove such a likelihood. See Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra, 194 F.2d at page 420. Similarity of appearance and ingredients will cause confusion only if consumers depend on the appearance of plaintiff's products in making their purchases. Though the ingredients are a determining factor in the buying of drug products, the appearance of drug products is usually of no importance whatsoever. Generally when purchasers are interested in the source of a drug they will buy that drug by its trade-mark or tradename and not by its appearance. It is significant that a pharmacist who, as an expert witness for plaintiff, testified that he thought the appearance of plaintiff's Unicap was distinctive and that customers "have an idea what it is like", refused to identify any of plaintiff's products "except in a bottle with a label on it." In view of this one would expect the average purchaser to ask for Unicap and not for a "football shaped, yellowish-tan, multiple vitamin capsule". In fact, as already noted plaintiff's advertising to the public emphasizes the trade-marks of its products and not their combinations of appearance and ingredients.

Though plaintiff's products have not acquired any secondary meaning, defendant will still be found to have engaged in unfair competition if there is proof that there were instances of actual palming-off of defendant's products for plaintiff's products by defendant or others. See Algren Watch Findings Co. v. Kalinsky, supra; Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, 799, certiorari denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518; Zangerle & Peterson Co. v. Venice Furn. Novelty Mfg. Co., supra, 133 F.2d at pages 269–270; Unique Art Mfg. Co. v. T. Cohn, Inc., D. C., 81 F.Supp. 742, 747, affirmed 2 Cir., 178 F.2d 403. Although the language used in some cases implies that a possibility of palming-off by druggists or others because of similarity of products is enough to justify granting an injunction, see Warner & Co. v. Lilly & Co., 265 U.S. 526, 530–531, 44 S.Ct. 615, 68 L.Ed. 1161; Ross-Whitney Corp. v. Smith, Kline & French Lab., 9 Cir., 207 F.2d 190, at page 197; Smith, Kline & French Laboratories v. Clark & Clark, D.C., 62 F.Supp. 971, 1005–1007, affirmed 3 Cir., 157 F.2d 725, 730; Smith, Kline & French Lab. v. Heart Pharm. Corp., D. C., 90 F.Supp. 976, 978, in those cases there was evidence of actual palming-off. See Warner & Co. v. Lilly & Co., supra, 265 U.S. at page 530, 44 S.Ct. 615; Ross-Whitney Corp. v. Smith, Kline & French Lab., supra, 207 F.2d at page 197; Smith, Kline & French Laboratories v. Clark & Clark, supra, 62 F.Supp. at page 1010, affirmed supra, 157 F.2d at page 731; Smith, Kline & French Lab. v. Heart Pharm. Corp., supra. Not even a charge of "contributory unfair competition" can be sustained in the absence of some proof of actual palming-off by defendant or anyone else. See Swank, Inc. v. Anson, Inc., 1 Cir., 196 F.2d 330, 332. The applicable law of New York also re-

quires proof of actual palming-off in the absence of secondary meaning. Germanow v. Standard Unbreakable Watch Crystals, 283 N.Y. 1, 9, 18, 27 N.E.2d 212; Mavco, Inc. v. Hampden Sales Ass'n, supra; American Binder Co. v. Regal & Wade Mfg. Co., supra.

In attempting to prove palming-off plaintiff established that defendant sold his products to pharmacists, that some pharmacists have substituted products of one manufacturer for those of another, that except in a few instances defendant did not advertise and distribute samples to doctors, and that after a number of requests one of defendants' salesmen informed a pharmacist acting as an investigator for plaintiff that defendant's products were similar to and could be used in place of plaintiff's products. It was also shown that defendant distributed cards to his salesmen containing a list of some of his products with a space alongside each. One of defendant's salesmen wrote the names of plaintiff's corresponding products into these spaces on the cards he received. He testified, however, that he used the cards for price adjustment and that he destroyed all the cards when he found that they could be used as guides for substitution. It does not appear that any of defendant's other salesmen had used the cards for such purposes.

Such evidence does not establish that there was any actual palming-off of defendant's products for plaintiff's products by the defendant, pharmacists or anyone else. See Swank, Inc. v. Anson, Inc., supra. Accordingly the court finds that plaintiff is not entitled to an injunction on account of any palming-off.

However, defendant's trade-name Syrocol infringes plaintiff's registered trade-mark Cheracol. While there are differences in spelling, the two marks are strikingly similar in sound. See La-Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 117, certiorari denied 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663; Telechron, Inc. v. Telicon Corp.,

D.C., 97 F.Supp. 131, 143, affirmed 3 Cir., 198 F.2d 903, 908; George W. Luft Co. v. Zande Cosmetic Co., D.C., 48 F.Supp. 602, 603, 605, affirmed 2 Cir., 142 F.2d 536, certiorari denied 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606. As a result it is reasonable to believe that an appreciable number of ordinarily prudent purchasers who do not have the marks available for a side by side comparison are likely to be confused. See American Chicle Co. v. Topps Chewing Gum, 2 Cir., 208 F.2d 560, 562; Royal Typewriter Co. v. Cachelin, D.C.S.D.N.Y.,127 F.Supp. 173.

Accordingly the plaintiff is entitled to judgment on the eleventh cause of action permanently enjoining defendant from using the trade name Syrocol for its cough syrup, and the defendant is entitled to judgment dismissing the other causes of action.

The foregoing shall constitute findings of fact and conclusions of law. If the parties desire to suggest additional findings they may be submitted upon notice for consideration by the court.