UNITED STATES v. SOUTHERN PAC. R. Co. et al.

(Circuit Court, N. D. California.  February 14, 1892.)

1. CIRCUIT COURTS—JURISDICTION—PRESUMPTIONS.
   The federal circuit courts possess no powers except such as the constitution and acts of congress concur in conferring, and the presumption is that every case is without their jurisdiction until the contrary affirmatively appears.

2. SAME—RESIDENCE OF PARTIES.
   Act Cong. March 3, 1887, requiring suits in which the federal jurisdiction is founded only on diversity of citizenship to be brought in the district of the residence either of the plaintiff or the defendant, does not apply to suits brought by the federal government, since it is present everywhere within the territorial limits of the United States. The only restriction with respect to such suits is that they shall be brought in the district of which the defendant is an "inhabitant."

3. SAME—CITIZENSHIP OF CORPORATIONS—"INHABITANCY."
   While, under the acts respecting the jurisdiction of the federal courts, a corporation is a "citizen" only of the state under whose laws it was organized, yet, with respect to the district in which it may be sued, under Act Cong. March 3, 1887, a railroad or telegraph company, chartered either by a state or the United States, is an "inhabitant" of any state in which it operates its lines and maintains offices for the transaction of business.

In Equity.  Suit by the United States against the Southern Pacific Railroad Company, the Southern Pacific Company, the Atlantic & Pacific Railroad Company, and the Western Union Telegraph Company.  Heard on pleas and motion to dismiss.  Overruled.

*Atty. Gen. Miller* and *Charles H. Aldrich,* for the United States.

*Charles H. Tweed, J. Hubley Ashton,* and *Harvey S. Brown,* for the Southern Pacific Railroad Company and the Southern Pacific Company.

*Pillsbury, Blanding & Hayne, Wm. C. Hazledine,* and *John J. McCook,* for the Atlantic & Pacific Railroad Company.

*Wager Swayne* and *Rush Taggart,* for the Western Union Telegraph Company.

HARLAN, Circuit Justice.[1]  This case is under submission on pleas and motions to dismiss, which contest the jurisdiction of this court to proceed *in personam* against such of the defendants, not corporations of California, as are not before the court otherwise than by service of process upon their agents in this district.  On this question there is such conflict in the decisions of the circuit courts that it is proper to examine it as if now for the first time presented.  It depends upon the interpretation that may be given to the act of March 3, 1887, defining the jurisdiction of the circuit courts of the United States.  24 St. p. 552, c. 373; 25 St. p. 433, c. 866.  Before looking at the provisions of that act, it will be well to inquire as to the nature of this suit.

By the act of congress of August 7, 1888, known as the "Telegraph Act," it is provided that all railroad and telegraph companies to which the United States has granted any subsidy in lands, bonds, or loan of credit, for the construction of either railroad or telegraph lines, and which

---

[1] Mr. Justice HARLAN heard this case under special commission issued by Mr. Justice FIELD, pursuant to section 617 of the Revised Statutes, and by consent of the parties.

are required to construct, maintain, or operate telegraph lines, and all companies engaged in operating such railroad telegraph lines—

"Shall forthwith and henceforward, by and through their own respective corporate officers and employes, maintain and operate, for railroad, governmental, commercial, and all other purposes, telegraph lines, and exercise by themselves alone all the telegraph franchises conferred upon them and obligations assumed by them under the acts making the grants, as aforesaid." 25 St. p. 382, c. 772, § 1; 12 St. p. 489, c. 120; 13 St. p. 356, c. 216.

This suit was brought pursuant to that act, its fourth section declaring:

"That in order to secure and preserve to the United States the full value and benefit of its liens upon all the telegraph lines required to be constructed by and lawfully belonging to said railroad and telegraph companies referred to in the first section of this act, and to have the same possessed, used, and operated in conformity with the provisions of this act, and of the several acts to which this act is supplementary, it is hereby made the duty of the attorney general of the United States, by proper proceedings, to prevent any unlawful interference with the rights and equities of the United States under this act, and under the acts hereinbefore mentioned, and under all acts of congress relating to such railroads and telegraph lines, and to have legally ascertained and finally adjudicated all alleged rights of all persons and corporations whatever claiming in any manner any control or interest of any kind in any telegraph lines or property, or exclusive rights of way upon the lands of said railroad companies, or any of them, and to have all contracts and provisions of contracts set aside and annulled which have been unlawfully and beyond their powers entered into by said railroad or telegraph companies, or any of them, with any other person, company, or corporation."

The Southern Pacific Railroad Company is a corporation organized under the laws of California, entitled, it is alleged, in respect to its railroad, to all the rights and privileges granted, and subject to all the conditions prescribed, by the acts of congress relating to the Atlantic & Pacific Railroad Company, and to be treated as if its railroad and telegraph line had been constructed as a part of the main line of that company.

The Southern Pacific Company is a corporation of Kentucky, but it has no property or business in that state, nor any officer or agent there, except an assistant clerk, holding a subordinate position, and maintained for the purpose of preserving the charter of the company under the laws of that commonwealth. The company has a large amount of property in California, and is operating lines of railroad in this district. Its general offices are, and for many years have been, in San Francisco, where its principal executive officers reside. The bill alleges that the Southern Pacific Railroad Company claims to have transferred to this company all its property, real, personal, and mixed.

The Atlantic & Pacific Railroad Company is a corporation organized under an act of congress approved July 27, 1866, with authority to construct a line of railroad and telegraph, and to carry on its business, in this state and elsewhere. 14 St. p. 292. Its general officers reside here, and at the commencement of this suit it was operating its railroad and maintaining offices in California.

The Western Union Telegraph Company is a New York corporation, owning a large amount of property and engaged in operating lines of tel-

egraph in this district, where it maintains general offices for the transaction of business. The bill alleges that it has an agreement with the Southern Pacific Railroad Company, under which the latter corporation has ceased to maintain and operate a telegraph line for public or commercial purposes, and under which the former company has acquired a monopoly of all such business on the lines of railroad in question.

The relief sought is a decree annulling, not only the lease, if such there be, by which the Southern Pacific Railroad Company assigned all its property to the Southern Pacific Company, but certain contracts of lease and sale by the former to the Atlantic & Pacific Railroad Company, as well as the above contract between the Southern Pacific Railroad Company and the Western Union Telegraph Company; and requiring the Southern Pacific Railroad Company henceforth, and through its own officers and employes, to maintain and operate telegraph lines along its entire main road and branches for railroad, governmental, commercial, and all other purposes, itself exercising all the telegraph franchises conferred upon it, and performing all the obligations assumed by it under the grants from congress.

The subpœna in this case was served on the secretaries, respectively, of the Southern Pacific Railroad Company and the Southern Pacific Company, on the general passenger and freight agent of the Atlantic & Pacific Railroad Company, and on the general superintendent of the Western Union Telegraph Company for the Pacific coast. The officers and agents on whom service was made were at the time located in San Francisco.

Among the suits of a civil nature, at common law or in equity, of which the circuit courts of the United States have original jurisdiction, under the act of March 3, 1887, amending that of March 3, 1875, are those involving the sum or value of more than $2,000, exclusive of interest and costs, and arising under the constitution or laws of the United States, or treaties made under their authority, or in which the United States are plaintiffs or petitioners; those involving the above sum in which there is a controversy between citizens of a state and foreign states, citizens, and subjects, or a controversy between citizens of different states. The same act provides:

"But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court, and no civil suit shall be brought before either of said courts against any person, by any original process or proceeding, in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant. * * *" 25 St. p. 434, c. 866; 24 St. p. 552, c. 373.

The provision in the original act of 1875, in respect to the district in which suits must be brought, was as follows:

"No person shall be arrested in one district for trial in another in any civil action before a circuit or district court. And no civil suit shall be brought before either of said courts against any person, by any original process or

proceeding, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceeding." 18 St. p. 470, c. 137.

·The Judiciary Act of 1789 contained substantially the same provision. 1 St. p. 79, c. 20.

It thus appears that the provision in the act of 1875 permitting suit— the plaintiff and the defendant being citizens of different states—to be brought in the district where the defendant was "found" was stricken out by the act of 1887, and that the right to bring a civil suit by original process in the district of which the defendant is an "inhabitant" is now subject to the condition that, where jurisdiction is acquired only by reason of diverse citizenship, the suit must be brought in the district of the residence of either the plaintiff or the defendant.

The first point made by the defendants is that the circuit courts of the United States possess no powers except such as the constitution and the acts of congress concur in conferring upon them, and that the legal presumption is that every cause is without their jurisdiction until and unless the contrary affirmatively appears. No doubt can exist as to the correctness of this principle. *Sheldon* v. *Sill*, 8 How. 441, 449; *Steam-Ship Co.* v. *Tugman*, 106 U. S. 118, 1 Sup. Ct. Rep. 58; *Bors* v. *Preston*, 111 U. S. 252, 4 Sup. Ct. Rep. 407; *Railway Co.* v. *Swan*, 111 U. S. 379, 383, 4 Sup. Ct. Rep. 510.

The pleas and motions to dismiss proceed upon the ground that a corporation is an "inhabitant" only of the state which created it, and, although doing business in another state, under its license or with its consent, is not, since the passage of the act of 1887, subject to the jurisdiction and power of a circuit court of the United States held in the latter state, except in suits in which jurisdiction is founded wholly on diverse citizenship, and in which the corporation is sued as a citizen of the state of its creation by a citizen of the state in which the court sits.

The act of 1887, thus construed, would work results not to have been expected from the action of the legislative branch of the government. (1) If, within the meaning of that act, a corporation is an "inhabitant" only of the state creating it, a corporation of a foreign country must be deemed an "inhabitant" only of that country; and, as the words, in the act of 1887,—"where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant,"—refer only to suits in judicial districts established by congress, and therefore only to suits between citizens of different states of the Union, it would follow, from the defendants' construction, that a circuit court of the United States could never acquire jurisdiction over a European corporation, doing business in this country; for the act of 1887 expressly prohibits the bringing of any suit in the circuit or district court "against any person, by any original process or proceeding, in any other district than that whereof he is an inhabitant." (2) If all the defendants in this suit are indispensable parties to the relief sought by the bill, —and they seem to be,—the government could not proceed against them

in any circuit court of the United States without encountering the objection now urged against the jurisdiction of this court; and it would be compelled, in order to enforce the provisions of the telegraph act, to invoke the jurisdiction of a state court, without the privilege of removing the suit, after it was brought, into the circuit court; the right of removal being given, by the act of 1887, only to defendants.    (3) A citizen of California can bring suit in this court against a corporation of another state which does business here by agents located in this state and district, if jurisdiction be founded only on the diverse citizenship of the parties; but, according to the defendants' interpretation of the act of congress, this court cannot entertain jurisdiction of a suit brought by the United States, under the authority of an act of congress, against the same corporation, upon a like cause of action.    While it is competent for congress to declare what part of the judicial power of the United States, as defined by the constitution, may be exercised by the courts which it establishes, we should not lightly presume that it was intended to produce the results which confessedly follow from the construction placed upon the act of 1887 by the learned counsel for the defendants.

The court is of the opinion that the clause in the first section of the act of 1887, requiring suits to be brought in the district of the residence either of the plaintiff or of the defendant where jurisdiction is founded only on diversity of citizenship, applies only to suits in which the parties, whether natural or artificial persons, are "citizens of different states," and cannot apply to suits brought by the United States.    The general government is present everywhere within the territorial limits of the United States, and, under the existing statutes, may invoke the jurisdiction of any circuit court of the United States in respect to any cause of action it may have against a natural or artificial person, subject only to the condition that its suit must be brought in the district of which the defendant is an "inhabitant."    The question, therefore, to be determined is whether a corporation created by the laws of another state, but doing business here, and having its agents located within the territorial jurisdiction of this court, may not, within the meaning of the statute, be deemed an "inhabitant" of this state and district.

Numerous cases have been cited by the counsel of defendants as showing that a corporation of one state is an inhabitant only of the state creating it.    Upon a careful examination of those cases, the court is of opinion that no one of them determines the precise question now before it.    The cases cited in argument establish these principles:

1. While a corporation is domiciled in the state by whose laws it was created, its legal existence in that state may be recognized elsewhere; so that, within the scope of its limited powers, it may make and enforce contracts in other states which are not forbidden by the laws of such states.    *Bank* v. *Earle*, 13 Pet. 519, 588, 589; *Christian Union* v. *Yount*, 101 U. S. 352, 356.    In the latter case, it was said that—

"In harmony with the general law of comity obtaining among the states composing the Union, the presumption should be indulged that a corporation of one state, not forbidden by the law of its being, may exercise within any

other state the general powers conferred by its own charter, unless it is prohibited from so doing, either in the direct enactments of the latter state, or by its public policy, to be deduced from the general course of legislation, or from the settled adjudications of its highest court."

2. For the purposes of jurisdiction in the courts of the United States, a corporation is to be deemed a citizen of the state creating it, and no averment to the contrary is permitted. *Railroad Co.* v. *Letson*, 2 How. 497; *Marshall* v. *Railroad Co.*, 16 How. 314; *Insurance Co.* v. *French*, 18 How. 404, 408; *Draw-Bridge Co.* v. *Shepherd*, 20 How. 227; *Railroad Co.* v. *Wheeler*, 1 Black, 286, 297; *Paul* v. *Virginia*, 8 Wall. 168; *Railroad Co.* v. *Harris*, 12 Wall. 65; *Railroad Co.* v. *Koontz*, 104 U. S. 5, 12; *Goodlett* v. *Railroad Co.*, 122 U. S. 391, 7 Sup. Ct. Rep. 1254.

3. A corporation of one state, by engaging in business or acquiring property in another state, does not thereby cease to be a citizen of the state creating it, (*Insurance Co.* v. *Francis*, 11 Wall. 210;) although, while the act of 1875 was in force, it could be "found" in any state where it did business regularly by its agents, process being served upon such agents. *Ex parte Schollenberger*, 96 U. S. 369. In the latter case the court was careful to say that it was unnecessary to inquire whether such a corporation was not also, within the meaning of the act of 1875, an inhabitant of the state in which it did business.

In some of the cases cited there are general expressions upon which much stress is laid by counsel. In *Bank of Augusta* v. *Earle*, it was said that a corporation must "dwell" in the state of its creation, and cannot "migrate" to another sovereignty; in *Louisville Railroad Co.* v. *Letson*, that it is an "inhabitant" of the state which brought it into existence; in *Marshall* v. *B. & O. Railroad Company*, that "its necessary habitat" is there; in *Ex parte Schollenberger*, that a corporation has its "legal home" at the place where it is located by or under its charter; and in *Railroad Co.* v. *Koontz*, that a corporation, by doing business away from its "legal residence," does not change its citizenship. A case much relied upon is *Insurance Co.* v. *Francis.* That was a suit brought in a court of Mississippi, by a citizen of Illinois against a New York corporation, doing business, by agents, in the state of Mississippi. The plaintiff sought to remove the case into the circuit court of the United States under the act of 1867, giving jurisdiction where the controversy was "between a citizen of the state in which the suit is brought and a citizen of another state." It was held that the defendant, being a corporation of New York, was a citizen of that state, and consequently the suit could not be removed. "Its place of residence," the court said, "is there, and can be nowhere else. Unlike a natural person, it cannot change its domicile at will; and, although it may be permitted to transact business where its charter does not operate, it cannot on that account acquire a residence there."

Those cases undoubtedly hold that a corporation cannot throw off its allegiance or responsibility to the state which gave it existence, and that its primary, legal domicile or habitation,—that is, its citizenship,—is in such state; consequently, for the purposes of suing and being sued in the courts of the United States, it is to be deemed a citizen of the state

by whose laws it was made an artificial person.    But neither those cases, nor any case in the supreme court of the United States, directly decides that a corporation may not, in addition to its primary, legal habitation or home in the state of its creation, acquire a habitation in, or become an inhabitant of, another state, for purposes of business, and of jurisdiction *in personam.*

It is eminently just that the defendants, not corporations of this state, should be regarded as inhabitants of this district for purposes of jurisdiction.    Each of them is under a duty, imposed by the constitution of this state, to have and maintain an office or place here for the transaction of its business.    By the same instrument it is provided that no foreign corporation shall be allowed to transact business here on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state; also, that a corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises or the breach occurs, or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases.    Const. Cal. 1879, art. 12, §§ 14-16.    The Code of Civil Procedure provides that, in a suit against a corporation formed under the laws of this state, the summons must be served on the president, or other head of the corporation, secretary, cashier, or managing agent thereof; and in a suit against a foreign corporation, doing business and having a managing or business agent, cashier, or secretary within this state, on such agent, cashier, or secretary.    Section 411.    And by an act approved April 3, 1880, it was provided that every railway corporation, and every corporation organized for the purpose of carrying freight or passengers, which has been or may be created or organized under or by virtue of the laws of any state or territory of the United States, or of any act of congress, may build railways, exercise the right of eminent domain, and do or transact any other business which such corporation might, if it had been created or organized under or by virtue of the laws of this state, having the same rights, privileges, and immunities, and subject to the same penalties, obligations, and burdens, as if they had been created or organized under the laws of California.    Laws of 1880, p. 21.    It is thus seen that corporations of other states do business here under the license of this state, subject to the implied condition that they may be brought, by service of process upon their agents, before the courts of this jurisdiction; and, in respect to railroad corporations organized under the laws of other states, and doing business here, they become, for most, if not for all, practical purposes, inhabitants of this state.

If it be said that inhabitancy in a state, in its strict legal sense, implies a permanent, fixed residence in that state, the answer is that a corporation of one state, operating, by agents, a railroad or telegraph line in another state, with its consent, or under its license, may be regarded as permanently identified with the business and people of the latter state, and, for the purposes of its business there, to have a fixed residence

within its limits; for it may not unreasonably be assumed that it will exert its powers there during the whole of its corporate existence, or so long as it is profitable to do so. It does there just what it would do if it had received its charter from that state. It seems to the court that a corporation of a state, or a corporation of the United States, holding such close relations with the business and people of another state, may, within a reasonable interpretation of the act of 1887, be deemed an "inhabitant" of the latter state for all purposes of jurisdiction *in personam* by the courts held there; although a corporation is, and, while its corporate existence lasts, must remain, a "citizen" only of the state which gave it life.

It is ordered and adjudged that the pleas and motions to dismiss, so far as they question the jurisdiction of this court to proceed *in personam* against the several defendant corporations, as inhabitants of this district, within the meaning of the above act of congress, be, and the same are hereby, overruled.