**ROSS-WHITNEY CORP. et al. v. SMITH KLINE & FRENCH LABORATORIES.**

**No. 13420.**

United States Court of Appeals
Ninth Circuit.

Sept. 16, 1953.

Rehearing Denied Oct. 20, 1953.

Robert O. Whitney, Beverly Hills, California, in pro. per., Louis S. Edelberg and Samuel Greenfield, Los Angeles, Cal., for appellants.

Lyon & Lyon, Leonard S. Lyon, Reginald E. Caughey, Los Angeles, Cal., Ballard, Spahr, Andrews and Ingersoll, Charles I. Thompson, William S. Rawls, Philadelphia, Pa., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

Smith Kline & French Laboratories, known as SKF, is principally engaged in the manufacture of prescription drugs which are sold to pharmacists. In 1936 SKF obtained the patent[1] on the combination drug, benzyl methyl carbinimine, and put it on the market under the name "Benzedrine" which was registered as a trade-mark with the United States Patent Office.[2] In 1938 the American Medical Association adopted the name amphetamine sulfate as its official designation for the combination.

---

[1]. U. S. Patent No. 1,879,003 issued in 1932 to Gordon A. Alles, and later assigned to SKF. See Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 1946, 157 F.2d 725.

[2]. Registration No. 337,407, issued August 4, 1936.

Some years after acquiring the patent on amphetamine sulfate, SKF developed through research the dextro-optical isomer of amphetamine sulfate, i. e., dextro-amphetamine sulfate, which it put on the market in 1939 under the name "Dexedrine" registered as a trade-mark with the United States Patent Office.[3]

At first, SKF marketed the Benzedrine in five or ten milligram dosage in the form of a round, white tablet with beveled edges and a concave bottom, and marketed the Dexedrine in a five milligram yellow tablet. In May 1949 SKF changed the form of its Benzedrine and Dexedrine tablets. The new Benzedrine tablet was colored pinkish-brown. It was in form similar to an equilateral triangle with sides slightly curved and points rounded. A straight furrow bisecting the tablet ran across it to one of the rounded corners. The tablet resembled what may be termed a Valentine heart. The new Dexedrine tablet had the same size and shape, but was colored orange. Between 1949 and 1951, SKF expended over $1,200,000 to advertise and publicize the new size, shape, and color combinations of its Benzedrine and Dexedrine tablets. SKF's patent expired on amphetamine sulfate and dextro-amphetamine sulfate in November, 1949, and other companies began to manufacture and sell the drugs under various brand names.[4]

In 1951, the Ross-Whitney Corporation, doing business as the Heart Pharmaceutical Co. of California, hereinafter referred to as appellants, began the manufacture, advertisement, and sale of a dextro-amphetamine sulfate tablet which in size, shape, and color exactly duplicated SKF's Dexedrine tablet. Appellants labeled their product "Heart Brand Dexedrine" and offered it for sale at a price considerably below that of SKF's Dexedrine.

In an action instituted against appellants in the United States District Court for the Southern District of California, SKF charged appellants with trade-mark infringement and unfair competition. In its complaint SKF prayed that the court issue a temporary restraining order and a preliminary and permanent injunction to prevent appellants from manufacturing, selling, offering for sale, advertising or otherwise dealing with medicinal tablets in imitation of SKF's Dexedrine or in using the trade-mark Dexedrine.

The District Court, Judge Leon B. Yankwich presiding, declined to issue an ex parte temporary restraining order, but entered a rule to show cause why a preliminary injunction should not issue. The matter was heard before Judge James M. Carter who ordered a preliminary injunction after making preliminary findings of fact and drawing preliminary conclusions of law which are summarized as follows:

### Preliminary Findings of Fact

1. SKF is a citizen of Pennsylvania and appellant is a citizen of California, and the amount in controversy exceeds $3,000.

2. SKF is using Dexedrine as its trade-mark for dextro-amphetamine sulfate.

3. Dexedrine is marketed in a unique, distinctive, non-functional, well-advertised color and shape combination which has acquired a secondary meaning in the wholesale and retail drug trade.

4. Dextro-amphetamine sulfate is a potent drug which may be sold only on prescription.

5. Dexedrine is sold in bottles bearing SKF's trade-mark, but the tablets do not individually contain the trade-mark.

6. Appellants have duplicated the size, shape, and color of SKF's Dexedrine tablet.

7. Certain retail pharmacists have purchased appellants' tablets and "palm-

---

3. Registration No. 373,000, issued November 21, 1939. [See Exhibit D.]

4. E. g., "Adrizine"; "Dextron"; "Ampha- dex"; and "D.A.S." are some of the brand names under which dextro-amphetamine sulfate is sold by other manufacturers.

ed them off" as SKF's and appellants have made that possible with their counterfeit tablets in bottles labeled Heart Brand Dexedrine.

8. Dexedrine is a valid trade-mark and not a synonym for dextro-amphetamine sulfate or the generic name of a drug.

9. Some of appellants' tablets were not of the potency of SKF's Dexedrine.

10. SKF has suffered irreparable injury in that large quantities of appellants' tablets have been distributed throughout the United States and have enabled druggists to palm off appellants' product for SKF's.

#### Preliminary Conclusions of Law

1. The court has jurisdiction over the parties.

2. Dexedrine is SKF's valid trade-mark for dextro-amphetamine sulfate.

3. Neither the trade-mark Dexedrine nor the shape-color combination of SKF's tablets is in the public domain.

4. Appellants unfairly competed with SKF and infringed the Dexedrine trademark.

5. Some of appellants' tablets were misbranded in violation of the Food, Drug and Cosmetics Act.

6. SKF has suffered and will continue to suffer irreparable injury unless a preliminary injunction is granted; and therefore SKF is entitled to a preliminary injunction.
Accordingly, an order of preliminary injunction was entered by which appellants were enjoined, jointly and severally, until a final determination in the action,

> "from making, advertising, offering for sale, delivering or selling dextroamphetamine sulfate, or any drug having similar therapeutic effects, in tablets having the combination of shape and color of plaintiff's product, or in any other shape and color so closely resembling the combination of shape and color of plaintiff's product as to be likely to enable druggists to palm off defend-

ant's product as plaintiff's product;
> \* \* \*."

Appellants were further ordered to obtain clearance from the court if they wished to market their product in a different shape and color, and they were enjoined from using the trade-mark Dexedrine. SKF was required to put up a $25,000 bond to secure appellants if they are subsequently found to have been "wrongfully enjoined". See Rule 65(c), Federal Rules of Civil Procedure, Title 28 U.S.C.A.

This appeal is from the preliminary injunction. See Title 28 U.S.C.A. § 1292.

#### Jurisdiction

In its complaint SKF alleges both infringement of a registered trade-mark and unfair competition. Title 15 U.S.C.A. § 1121 bestows upon the United States District Court original jurisdiction in civil suits for trade-mark infringement without regard to the amount in controversy or the lack of diversity of citizenship of the parties. And Title 28 U.S.C.A. § 1338(a) bestows jurisdiction on the District Court in civil cases affecting registered trade-marks. Thus, there can be no doubt that the suit for trade-mark infringement is properly before the District Court.

The suit for unfair competition is also properly before the District Court for several reasons, First, since there is an allegation of infringement of SKF's trade-mark Dexedrine before the District Court, Title 28 U.S.C.A. § 1338(b) gives the court jurisdiction to determine at the same time the substantial and related claim by SKF that appellants are guilty of unfair competition in copying the appearance and name of SKF's tablet. Furthermore, this court recently held in Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, that the District Court has original jurisdiction over causes alleging unfair competition where the acts complained of affect interstate commerce even in the absence of diversity of citizenship of the parties and jurisdictional amount and where there is no substantial and related claim under the federal

194

trade-mark laws. Citing 15 U.S.C.A. § 1126(b), (h) and (i).[5]

■ In any event, the District Court has jurisdiction under Title 28 U.S.C.A. § 1332. There is the required diversity of citizenship since SKF is a citizen [6] of Pennsylvania and appellants are citizens of California. And the District Court's finding that the amount in controversy exceeds $3,000 is supported by the evidence that SKF had a substantial investment in Dexedrine and its peculiar shape-color-size combination by virtue of the $1,200,000 spent in advertising alone from May 1949 to September 1951.[7]

Limited Question Before Court of Appeal

The decision to grant or to refuse a preliminary injunction lies within the District Court's sound exercise of its discretion. In an appeal from the grant of a preliminary injunction, the question before this court is, did the District Court abuse its discretion in granting a preliminary injunction?[8]

■■ The ruling on the motion for a preliminary injunction leaves open the final determination of the merits of the case. However, to the extent that the merits have been indicated by affidavit or testimony before the trial court, they must be considered in an appeal from the granting of a preliminary injunction since it is the rule in this circuit that the district court has not abused its discretion if "the possibility that the plaintiff may make out a case upon the merits" has been established. Northwestern Stevedoring Co. v. Marshall, 9 Cir., 1930, 41 F.2d 28, 29.

Trade-Mark [9]

Does SKF have a valid trade-mark in the name of Dexedrine? It is appellants' contention that the name Dexedrine became so identified with SKF's product during the period of the patent as to become the generic name of the product, and that upon the expiration of SKF's patent both the patent and its generic name fell into the public domain. SKF takes the position that Dexedrine is a trade-mark for a drug, the generic name of which is dextro-amphetamine sulfate.

■■ When a new product or machine is patented and then marketed for the duration of the patent under a particular name, if the consumer so identifies the name with the article itself, without regard to the source of its manufacture, that name may become the generic designation of the product and as such enters the public domain along with the patent at the end of the protected period.[10] The generic designation may have originated as a proper name,[11] or a descriptive name,[12] or even an invented

5. See, also, Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339.

6. For the purposes of diversity, a corporation is a "citizen". Barrow Steamship Co. v. Kane, 1898, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964; Thomas v. South Butte Mining Co., 9 Cir., 1916, 230 F. 968; United States v. Southern Pacific R. Co., C.C.1892, 49 F. 297.

7. See Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 1929, 34 F.2d 774; Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 1938, 95 F.2d 711.

8. Owen v. Perkins Oil Well cementing Co., 9 Cir., 1924, 2 F.2d 247; Kings County Raisin & Fruit Co. v. U. S. Consol. Seeded Raisin Co., 9 Cir., 1910, 182 F. 59; Weiner v. National Tinsel Mfg. Co., 7 Cir., 1941, 123 F.2d 96.

9. "The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." Title 15 U.S.C.A. § 1127.

10. See Title 15 U.S.C.A. § 1064(c); Singer Mfg. Co. v. June Mfg. Co., 1896, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

11. "Singer" is the generic description of a type of sewing machine: Singer Mfg. Co. v. June Mfg. Co., 1896, 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118.

12. "Shredded Wheat" is the generic description of a particular breakfast cereal composed of "whole wheat which has been boiled, partially dried, then drawn or pressed out into thin shreds and baked" to form a pillow-shaped biscuit.

name.[13] However, to the extent that the given name is identified in the mind of the consumer with the source of the product, the name may be protected.[14] "There is no presumption of law, without proof of the fact * * *, that a name used on a patented article passes to the public on the expiration of the patent." President Suspender Co. v. MacWilliam, 2 Cir., 1916, 238 F. 159, 163.

We find it significant that the combination drug dextro-amphetamine sulfate (or Dexedrine, as designated by SKF) is so powerful that it can be obtained by the consumer only as a patient on a physician's prescription. He cannot purchase Dexedrine or the combination drug by generic name over the counter. It follows that he is not concerned with the designation of the product, but the prescribing doctor and the pharmacist are concerned. Therefore, it is irrelevant that the patient for whom the drug is prescribed may or may not know its generic name or the name coined by the manufacturer. Since the manufacturer's market for the drug is, in fact, the prescribing physician through the pharmacist, the word Dexedrine through advertising as to identification by size, shape, and color in tablet form may well come to mean SKF's preparation of dextro-amphetamine sulfate.

To paraphrase the American Law Institute's Restatement of Torts, 1938 ed., Vol. 3, § 735, Illustration 3:

"A [i. e., SKF] invents a medicinal product for which he secures a patent and which he markets to druggists for resale. He gives the product the name [dextro-amphetamine sulfate] and markets it under the name [Dexedrine] as his trademark. He sells the product in bulk to druggists who then put it up in smaller packages and sell it to consumers as [Dexedrine] prepared by them. In the course of years [Dexedrine] becomes the only name by which the product is known to consumers and they regard the name as the generic designation for the product. Druggists, however, know the technical name and know that [Dexedrine] is A's brand name for the product. A's interest in the designation is then not protected in sales to ultimate consumers; but it is protected, as far as practicable, in sales to druggists."[15]

The record abounds with affidavits of doctors and pharmacists stating that to them the name Dexedrine designates the dextro-amphetamine sulfate tablets marketed by SKF. Therefore, the District Court's preliminary finding that Dexedrine is SKF's trademark for dextro-amphetamine sulfate is not clearly erroneous.

Furthermore, SKF's statement of registration of the trade-mark Dexedrine was in evidence before the court. And there are exhibits of bottles in which SKF distributes its preparation. On the label of each bottle there appears the word Dexedrine footnoted with an asterisk after which appears: "T.M.Reg. U.S.Pat.Off." and a reproduction of the tablet, indicating its color, shape, and size with the designation "Trade [picture] Mark." We conclude that the requirements of Title 15 U.S.C.A. §§ 1051, 1072, and 1111, have been complied with and accordingly the District Court did not err in its preliminary conclusion that Dexedrine is a valid trade-mark.

Kellogg Co. v. National Biscuit Co., 1938, 305 U.S. 111, 113, 59 S.Ct. 109, 111, 83 L.Ed. 73.

13. "Aspirin" is the generic description (for some purposes later referred to in this opinion) for the drug "acetyl salicylic acid", also called "monoaceticacidester of salicylicacid". Bayer Co. v. United Drug Co., D.C.S.D.N.Y., 1921, 272 F. 505, 510.

14. "Prest-O-Lite" is not the generic description of an acetylene gas package upon which the patent has expired. Searchlight Gas Co. v. Prest-O-Lite Co., 7 Cir., 1914, 215 F. 692. "Ideal" is not the generic description of a type of hairbrush. Hughes v. Alfred H. Smith Co., 2 Cir., 1913, 209 F. 37.

15. Cf. Bayer Co. v. United Drug Co., D. C. 1921, 272 F. 505.

## Unfair Competition

SKF also alleges in its complaint that appellants have engaged in unfair competition by counterfeiting SKF's Dexedrine tablet with "the intent and suggestion * * * that the purchasers [i. e., pharmacists] in filling prescriptions for 'Dexedrine' would substitute said imitation tablets for the distinctive tablets of [SKF] * * * thus deceiving the physicians and their patients and causing irreparable damage and injury * * * to [SKF's] good will * * *."[16]

■ Fraudulent practices which induce confusion of goods and deception of the public have been proscribed as outside the realm wherein competitive forces may operate freely and untrammeled.[17] In order to prove the fraud it is necessary to establish that the name or appearance of the injured product has acquired either a technical trademark or a secondary meaning,[18] the copying of which would lead to confusion; and that the copying product is intended to be palmed off[19] upon the thereby deceived consumer.

When Dexedrine was first put on the market it was sold in the form of a round, yellow, scored or furrowed tablet. As was pointed out in Smith, Kline & French Laboratories v. Clark & Clark, 3 Cir., 1946, 157 F.2d 725, the roundness[20] and scoring[21] are functional features which cannot acquire a secondary meaning. Since that case dealt with Benzedrine which was a white tablet,[22] there was no holding as to whether the yellow coloring formerly employed by SKF to distinguish its Dexedrine tablet was functional.

■ However, in 1949 SKF changed the color and shape of its Dexedrine tablet to an orange, Valentine-like heart, and advertised the change widely in an effort to develop a distinctive tablet which would point to SKF as the manufacturer without actually putting SKF's initials on the tablet. According to the affidavits of doctors and pharmacists submitted by SKF, its campaign met with considerable success. Whether or not the heart shape is functional in that it prevents the tablet from rolling away when dropped, we do not decide. It is clear that there is evidence to the effect that the shape and color of the tablet were for the purpose of identifying SKF's product Dexedrine. Thus, the Court's preliminary finding that the color and shape combination employed by SKF has acquired a secondary meaning is not clearly erroneous.

Appellants' marketing of a dextroamphetamine sulfate tablet identical, for all practical purposes, in size, shape, and color to SKF's dextro-amphetamine sulfate tablet sets the stage for possible confusion of the two products. Appellants' argument that there is no confusion since their tablets are sold by them in, and are dispensed by the pharmacists from, bottles which are unambiguously marked, was not neces-

---

16. Allegation XIX of the Complaint.

17. See 63 C.J., Trade-Marks, Trade-Names and Unfair Competition, § 104(3); Restatement of Torts §§ 760, 712, 717, 741; 148 A.L.R. 13; 24 Cal Jur. Trade-Marks, etc. § 16. As Judge Goodrich said in Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, at page 145. "It is worth pointing out, at the start of our discussion, that we are in a field where the tendency of the law 'has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists.' Restatement, Torts, Volume III, page 540."

18. See Lucien Lelong, Inc., v. Lander Co., 2 Cir., 1947, 164 F.2d 395, 397; 150 A.L.R. note 1067 et seq., 1071.

19. See G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 1944, 142 F.2d 499; Zangerle & Peterson Co. v. Venice, Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 269; My-T Fine Corp. v. Samuels, 2 Cir., 1934, 69 F.2d 76.

20. For economy of manufacture.

21. To enable the patient to take smaller dosages by splitting the tablet.

22. The inactive ingredient which comprises the bulk of the tablet is sugar milk, a white substance. Therefore, in the court's opinion, the white color of the tablet was functional.

sarily controlling on the trial judge. Moreover, appellants have labeled their product as Heart Brand Dexedrine. And, as we have already pointed out, the term Dexedrine is SKF's trade-mark for dextro-amphetamine sulfate. Since a trade-mark refers to the source of a product, the use of the name Dexedrine by appellants, even in connection with the prefix Heart Brand, suggests that the tablet is the product either of SKF or a licensee of SKF. In other words, SKF's reputation is involved. In such a circumstance the label does not prevent conscious or accidental confusion of the two products when Dexedrine is prescribed. Furthermore, since the tablets look alike, no label could prevent unethical pharmacists from substituting appellants' tablets for SKF's without detection and to the deceit of the prescribing doctor and his patient.

Confusion or invited substitution is indicated by the showing that appellants' advertising circular contains the slogan "We Guarantee a Change of Heart" and encloses two samples of heart-shaped tablets which are Chinese copies of SKF's Dexedrine tablet, and by the showing that appellants' tablet is sold at a lower price. The combination of appearance, name, and advertising employed by appellants could well lead the trial judge to conclude that, paraphrasing a paragraph from William R. Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161, "* * * efforts of [appellants] to create a market for [Heart Brand Dexedrine] were directed not so much to showing the merits of that preparation as they were to demonstrating its practical identity with [SKF's Dexedrine], and, since it was sold at a lower price, inducing the purchasing druggist, in his own interest, to substitute, as far as he could, the former for the latter. In other words, [appellants] sought to avail [themselves] of the favorable repute which had been established for [SKF's] preparation in order to sell its own." William R. Warner & Co. v. Eli Lilly & Co., supra, 265 U.S. 529, 530, 44 S.Ct. 617.

Whether or not the sales to the pharmacists were deceptive, "sales to the ultimate purchasers are of the product in its naked form out of the bottle, and the testimony discloses many instances of passing off by retail druggists of [appellants'] preparation when [SKF's] preparation was called for. *That no deception was practiced on the retail dealers, and that they knew exactly what they were getting, is of no consequence. The wrong was in designedly enabling the dealers to palm off the preparation as that of [SKF]."* [Italics ours.] William R. Warner & Co. v. Eli Lilly & Co., supra, 265 U.S. at 530, 44 S.Ct. at page 617. [We have interpolated "appellants'" for "petitioner's" and "SKF's" for "respondent's" in paraphrasing the cited opinion.]

■ We conclude that there is sufficient evidence to support the preliminary conclusion that appellants had engaged in unfair competition.

### The Preliminary Injunction

Appellants argue that the preliminary injunction must fall because based on affidavits rather than on oral testimony, and because it does not conform to the requirements of Rule 65(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

In support of its contention that oral testimony is necessary to sustain a preliminary injunction, appellants quote from Sims v. Greene, 3 Cir., 1947, 161 F.2d 87, 88, as follows:

"The allegations of the pleadings and affidavits filed in the cause are conflicting. Such conflicts must be resolved by oral testimony since only by hearing the witnesses and observing their demeanor on the stand can the trier of fact determine the veracity of the allegations made by the respective parties. If witnesses are not heard the trial court will be left in the position of preferring one piece of paper to another. * * Rule 65(a) provides that no preliminary injunction shall be issued without notice to the adverse party.

Notice implies an opportunity to be heard. Hearing requires trial of an issue or issues of fact. Trial of an issue of fact necessitates opportunity to present evidence and not by only one side to the controversy."

■ In our view, a preliminary injunction may be granted upon affidavits. A requirement of oral testimony would in effect require a full hearing on the merits and would thus defeat one of the purposes of a preliminary injunction which is to give speedy relief from irreparable injury. Where the injunction is granted, the enjoined party is protected by the requirement that the petitioner post a bond and by the requirement that the court support its discretionary action with findings of fact and conclusions of law. However, even granting the premise that oral testimony must be had to resolve material conflicts in affidavits presented upon the motion for the issuance of a preliminary injunction, affidavits would be sufficient in the circumstances of the instant case because there is no dispute as to the basic facts. Appellants manufacture and sell dextro-amphetamine sulfate tablets in the same shape, size, and color as SKF's; and appellants designate their tablets Heart Brand Dexedrine, while SKF calls its tablets just plain Dexedrine.

As for the requirement of notice and a hearing, affidavits meet the requirements of due process.

Rule 65(d) requires that "[e]very order granting an injunction * * * shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other docu-ment, the act or acts sought to be restrained * * *." Rule 65(d), Federal Rules of Civil Procedure.

The order for preliminary injunction clearly sets forth the persons to whom it applies and enjoins them "until the final determination of this action from making, advertising, offering for sale, delivering or selling dextro-amphetamine sulfate, or any drug having similar therapeutic effects, in tablets having the combination of shape and color of plaintiff's product or in any other shape and color so closely resembling the combination of shape and color of plaintiff's product as to be likely to enable druggists to palm off defendants' product as plaintiff's product; * * *" and from marketing their product in any other shape and color except "upon prior application to this [the District] Court, at which time, the distinctive features which defendants will be required to use will be determined * * *" and from "making any use whatsoever of the trademark 'Dexedrine' or any imitation or simulation thereof in connection with pharmaceutical products * * *." The above quoted injunction is clear and unambiguous in its terms; and it carries out its purpose of restraining appellants from dealing in a product in such a way as to create confusion to SKF's detriment.

 And finally the order of injunction sets forth as the reason for its issuance that otherwise "plaintiff will suffer irreparable loss, injury (and) damage." Those reasons are specific enough for the requirements of Rule 65(d), especially when read in connection with the Court's findings of fact as to SKF's injury.[23]

23. Findings of Fact. "17. That plaintiff by reason of the specific facts heretofore set forth, suffered irreparable injury, loss (and) damage, particularly in that large quantities of defendants' tablets have been distributed to druggists unknown to plaintiff, in various parts of the United States of America, and druggists have, and may in the future continue, to palm off said tablets for plaintiff's tablets in filling physicians' prescriptions calling for and specifying plaintiff's 'Dexedrine' tablets to the deception of the medical profession and consumers, and the continued distribution of defendants' tablets, unless restrained, will cause further and continued irreparable injury, loss (and) damage to plaintiff.

"18. That plaintiff has suffered irreparable injury, loss (and) damage by reason of defendants' deliberate use of its

Appellants also take the position that the injunction is too broad in that it requires them to cease manufacturing or selling its dextro-amphetamine sulfate in the same shape as SKF's. Appellants argue that a preliminary injunction must maintain the *status quo*, which in their view would permit them to continue sales to present customers. Otherwise, they claim, their business would be destroyed prior to the oral hearing on the merits. Citing John Dollinger Jr., Inc., v. Horkan, 1918, Tex. Civ.App., 202 S.W. 978.

The maintenance of the *status quo* is only one of the reasons for which a preliminary injunction may be granted. It may also be granted to prevent irreparable injury.[24] Since SKF's reputation would be prejudiced by the substitution of a tablet which looked like SKF's but which the District Court found did not conform to the labeled potency, SKF would suffer irreparable injury. On the other hand, appellants' business which they describe in their brief as a "small business, enough to earn a fair living for the members of the corporation and their individual families", would seem to be amply protected by the bond of $25,000 which the trial court ordered and which has been posted.

The findings of fact and conclusions of law are all preliminary and are not to be construed as foreclosing any findings and conclusions to the contrary based upon evidence which may be received at the trial on the merits. However, pending a decision on the merits, the preliminary injunction shall stand.

Affirmed.

trademark 'Dexedrine' and the continued use, unless restrained, will cause further and continued irreparable injury, loss (and) damage to plaintiff."

24. 43 C.J.S., Injunctions, § 17.