SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

A. G. BELLIN SECURITIES CORP., Arthur G. Bellin, Benjamin Zwang, Walter M. Holtzberg, Sidney B. Josephson, General Oil & Industries, Inc., Defendants.

SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Sidney B. JOSEPHSON, Stratford Securities Co., Inc., Samuel P. Lewis, Joseph Schwartz and Pauline Edith Lewis, Defendants.

United States District Court
S. D. New York.

March 2, 1959.

Paul Windels, Jr., New York City, Regional Administrator for Securities and Exchange Commission, John J. Devaney, Jr., New York City, Henry R. Bright, Fred L. D'Ambrosi, New York City, of counsel.

McNabb, Sommerfield & James, New York City, for defendants A. G. Bellin Securities Corp., Arthur B. Bellin, Benjamin Zwang and Walter M. Holtzberg.

Curran, Mahoney, Cohn & Stim, New York City, for defendants Sidney B. Josephson and General Oil & Industries, Inc. Menahem Stim, New York City, of counsel.

McGOHEY, District Judge.

Motions for preliminary injunction in each of these actions are here considered. The Commission in both actions seeks permanently to restrain alleged violations of sections 5 and 17(a) of the Securities Act of 1933 as amended,[1] (hereafter referred to as the Act) in the sale of the stock of General Oil & Industries, Inc., a Nevada corporation.

The Act prohibits use of the mails or other means of transportation or communication in interstate commerce; under section 5, in the sale or delivery of securities with respect to which a proper registration statement has not been filed with the Commission; under section 17 (a), in the sale of or offer to sell any securities by means of any fraudulent device or "any * * * practice * * * which operates or would operate as a fraud upon the purchaser."

[1]. 15 U.S.C.A. § 77e and § 77q(a).

The complaints are substantially identical. Each contains two "counts," the first of which charges violation of section 5, the second, violation of section 17(a).

All defendants named in the first action have answered. In the second, the only defendants served were Josephson, who has answered, and Stratford Securities Co., Inc., which has defaulted. "Judgment of Preliminary Injunction" was entered against the latter on December 30, 1958, by Judge Palmieri. The answering defendants in both actions deny the alleged violations. They contend also in affidavits and briefs that the stock of General Oil & Industries, Inc., is, under section 3(a) (1) of the Act,[2] exempt from its registration provisions because the stock was "disposed of by the issuer" prior to the date the Act became law. Josephson, a member of the New York bar, further urges in his affidavits filed on these motions, though not in his answers, that whatever he did in the premises was done solely in behalf of and pursuant to instructions from clients. The identity of these, however, is not disclosed.

The motions are based on the complaints and the affidavits of four of the Commission's investigators. These affidavits purport to relate the substance of answers to questionnaires sent by the Commission to unnamed purchasers of the stock and alleged statements by purchasers, of whom only seven are named, in telephone conversations with the investigators. According to the affidavits, many specific misrepresentations concerning the corporation's assets and prospects were made to the seven named purchasers. Further, it is alleged that the answers to the questionnaires reveal additional specific misrepresentations made to the unnamed purchasers.

The defendants have submitted affidavits by six of the named purchasers. These directly contradict the allegations, as to them, of the Commission's investigators. The defendants have also filed affidavits of forty-seven other purchasers of a total of about 48,000 shares, who deny that any of the alleged misrepresentations were made to them. The affidavits are also in conflict as to the manner in which the stock was placed with brokers, and its price determined.

In these circumstances, the issue as to whether any of the defendants have violated section 17(a) as charged in the "second count" must await a trial, at which the court will have an opportunity to hear and assess the credibility of the witnesses.

There remains the question whether the stock was exempt from the registration requirement. The parties are in substantial agreement on the basic facts relevant to this issue and there is no need for oral testimony.[3] The facts are as follows.

General Oil & Industries, Inc., was originally incorporated under the laws of Nevada in January, 1931 as Pacific Gold Placers, Incorporated. Its then authorized capital stock was one million shares of common and a half million shares of preferred. The par value of each class was $1 per share. The corporation was formed by one Mark Bradshaw and an associate named Albert Silver. In March, 1946 the corporation's name was changed to Goldfield Daisy Gold Mining Company. There is neither claim nor evidence that the corporation ever engaged in any business whatever or that its stock was ever offered or sold to the public prior to the summer of 1958, when the corporation was purchased by the defendant Josephson under the following circumstances.

In the early spring of 1958 Josephson, concededly, was seeking a corporation whose stock could be purchased and resold to the public without first filing a registration statement with the Commission. He engaged one Cravitz, a lawyer in California, and instructed him to "locate a corporation which [had been] organized prior to 1933 and whose shares

---

2. 15 U.S.C.A. § 77c(a) (1).

3. See Ross-Whitney Corp. v. Smith Kline & French Lab., 9 Cir., 207 F.2d 190, 198.

[had been] issued prior to or within sixty days after May 27, 1933 and thus had the status of 'exempted securities' as defined in section 3(a)1" of the Act.[4] Within a few weeks Cravitz reported he had "located" the Goldfield Daisy Gold Mining Company. He had been aided in this effort by one Titlow, an insurance broker of Tonopah, Nevada. On April 28, 1958, Josephson agreed to buy all the stock of that corporation for $6,000 and by his check dated the same day made a down payment of $2,000 to Cravitz. Later the price was increased to $10,000 and Josephson, by his check dated May 20, 1958, paid Cravitz the balance of $8,000.

Titlow delivered the records and other documents of the corporation to Cravitz on May 20, 1958 at the Sands Hotel in Las Vegas, Nevada. Among the documents delivered were a corporate minute book and four stock certificates. One of the latter represented 999,998 shares of common stock in the name of Mark G. Bradshaw. Two certificates were in the names of Albert Silver and Myrtle Bradshaw respectively, each representing one share of common. The fourth certificate, for 500,000 shares of preferred stock, appears to have been issued to Mark Bradshaw who thereafter donated them to the corporation. At the time of sale to Josephson, the corporate records showed these preferred shares as treasury stock. During this meeting between Titlow and Cravitz, there was prepared a certificate which was later filed, changing the name of the corporation to General Industries, Inc. and changing the capital structure by increasing the authorized common stock from one million to three million shares of $1 par value.

In June, 1958, Josephson received from Cravitz the corporate records and the several certificates described above. On July 11, 1958, the corporation's name was again changed, to General Oil & Industries, Inc., and shortly thereafter its stock was publicly offered, sold and delivered in the United States through various brokers located in this country and in Canada. The United States mails and other means of transportation and communication in interstate commerce were used. Josephson engaged a transfer agent and at least participated in making, if indeed he did not solely direct, the marketing arrangements with the various brokers.

Section 3(a) (1) of the Act exempts from its registration provisions, "Any security which, prior to or within sixty days after the enactment of this title, has been sold or disposed of by the issuer or bona fide offered to the public, but this exemption shall not apply to any new offering of any such security by an *issuer* or *underwriter* subsequent to such sixty days * * *." [emphasis supplied]

Section 2(4)[5] defines the term "issuer" as "every person who issues or proposes to issue any security."

Section 2(11)[6] defines the term "underwriter" as *"any person who* has purchased from an issuer with a view to * * * the distribution of any security, or *participates or has a direct or indirect participation* in any such undertaking * * *." [Emphasis supplied] This section further provides that the term "issuer" as used therein "shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer."

■ It is clear that the stock here involved was not sold, disposed of or bona fide offered, to the public until 1958. Moreover even if it be considered to have been "disposed of" by issuance of all but one share, to Mark Bradshaw and Silver, they under the statute were "issuers" since they controlled the "issuer" Pacific Gold Placers, Incorporated. Josephson clearly purchased the stock either for himself or his clients, if any, with a view to its distribution. Accordingly he, under section 2(11), became an "under-

---

4. Josephson affidavit, p. 2.

5. 15 U.S.C.A. § 77b(4).

6. 15 U.S.C.A. § 77b(11).

writer" whose "new offering" of the stock was not exempt from registration.[7]

Furthermore the radical change in capital structure of the corporation which was effected in 1958 made the securities now being offered and sold to the public entirely different from those purchased by Josephson from the Bradshaws and Silver. The Commission, whose construction of the statute commands respect,[8] held, as early as 1937, that such a change is sufficient to take the changed securities out of the class exempted under the statute.[9]

A preliminary injunction will be issued restraining all the answering defendants in each action from using the mails or other means of transportation or communication in interstate commerce in the sale or delivery of stock of General Oil & Industries, Inc., unless and until a registration statement is filed with the Commission and is in effect. The form of the injunction will be settled on two days' notice.

7. See SEC v. Saphier, S.D.N.Y. (1936), 1 Securities and Exchange Commission Judicial Decisions 291, 293; not otherwise reported.

8. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796.

9. Matter of Bankers Union Life Company, 2 Securities and Exchange Commission Decisions and Reports 63, 73.